UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


EVELYN KONRAD,                . Civil No. 12-CV-4021-ETB-JFB
                                  .
         Vs.                .
                                  . 824 Federal Plaza
                                  . Central Islip, NY
EPLEY ROBINSON AND ROBINSON   .
et als.,                           .
                                  . December 7, 2012
. . . . . . . . . . . . . . . .


TRANSCRIPT OF CONFERENCE
BEFORE HONORABLE E. THOMAS BOYLE,
UNITED STATES DISTRICT MAGISTRATE


APPEARANCES:


For The Plaintiff:             EVELYN KONRAD, ESQ. Pro se
                              18 So. Rosko Drive
                              Southampton, NY 11968


For Epley, Robinson:          DEVITT SPELLMAN BARRETT LLP
                              By: DAVID H. ARNTSEN, ESQ.
                              50 Route 111, Suite 314
                              Smithtown, NY 11787


For The Quintins:              DANIEL C. MALONE, ESQ.
                              888 7TH AVE, FL 45
                              New York, New York


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**TERRY GRIBBEN'S TRANSCRIPTION SERVICE**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**
**800 603-6212**
**(732) 263-0044   Fax No. 732-263-0075**
www.tgribbentranscription.com

```
 1   ADDITIONAL APPEARANCES:

 2

 3   For William Brown        WILLIAM BROWN, Pro Se

 4                            (Telephonically)

 5                            27 Old Stamford Road

 6                            New Canaan, CT  06840

 7

 8   For Denis Guerin         LAW OFFICE OF DENIS GUERIN

 9                            BY:  THOMAS FOLEY, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X

2

3   ORAL ARGUMENT                        PAGE

4        BY MS. KONRAD                   4

5        BY MR. ARNTSEN                  14

6        BY MR. MALONE                   17

7        BY MR FOLEY                     20

8        BY MR. BROWN                    21

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           COURT CLERK:  Calling case 12-cv-4021, Konrad versus

2    Epley.  Parties, please state your appearance for the record.

3           MS. KONRAD:  Evelyn Konrad, plaintiff.

4           MR. ARNTSEN:  Good morning, Your Honor, David

5    Arntsen, Devitt Spellman Barrett for defendants, Epley,

6    Robinson and Robinson.

7           MR. MALONE:  Good morning, Your Honor, Daniel Malone,

8    for defendants, Donald Quintin and Melinda Quintin.

9           MR. BROWN:  Good morning, Your Honor, William J.

10   Brown, defendant, pro se.

11          MR. FOLEY:  Good morning, Your Honor, Thomas Foley,

12   Law Office of Denis Guerin for defendant, Denis Guerin.

13          THE COURT:  Can everybody hear adequately, including

14   Mr. Brown who is with us by phone?

15          MR. BROWN:  Yes, Your Honor.

16          THE COURT:  Okay.  If there is any problem, I have no

17   objection if you want to come up to the bench if it makes it

18   any easier and we have mics up here.  So we'll start off like

19   this.  If you can hear adequately, but feel free.  Ms. Konrad,

20   you're also an attorney?

21          MS. KONRAD:  Yes.  Yes, Your Honor.

22          THE COURT:  And I gather a very persistent one.  This

23   is the third litigation you've brought against these folks?

24          MS. KONRAD:  Actually, I had an attorney bring an

25   Article 78 in 2007 because I was not yet admitted to the bar.

Konrad/Argument                                        5

1  I was still in law school.  I brought an action against another

2  Article 78 myself.

3          THE COURT:  Another, I'm sorry?  I didn't catch what

4  you said, another Article 78?

5          MS. KONRAD:  Yes.

6          THE COURT:  Against the same defendants?

7          MS. KONRAD:  Those were both Articles 78s.  Excuse

8  me?

9          THE COURT:  Against the same defendants?

10          MS. KONRAD:  No, the first Article 78 in which case I

11  was represented by Russell Dupree (phonetic) was against the

12  builder right behind me, 37 Leos Lane which is now owned by

13  Melinda and Donald Quintin.  And that case --

14          THE COURT:  What were you complaining about, that the

15  houses are too big?

16          MS. KONRAD:  The complaint was that they were

17  violating the common plan and scheme of the approved and

18  certified Roscoe Place development and subdivision.

19          THE COURT:  But translating that, what's the rub with

20  you, that the houses are too big?

21          MS. KONRAD:  That they're illegal, Your Honor, not

22  because they're too big.  Too big would be an aesthetic

23  objection.  My objection is legal.

24          THE COURT:  Well, I guess if they were smaller than

25  your house, would you still have an objection to what was going

1  on?

2              MS. KONRAD:  No, in that case they would be in

3  harmony with our subdivision.

4              THE COURT:  You want everything the same size as your

5  subdivision and your house?

6              MS. KONRAD:  They are three times as large.

7              THE COURT:  Okay.  So that's clearly the rub, is it

8  not?

9              MS. KONRAD:  Well, it's something that --

10             THE COURT:  This is an initial conference.  I'm

11  trying to find out, you know, what's really at stake here.

12             MS. KONRAD:  Right.  It's a 67 lot subdivision that

13  was certified and approved, the initial plat was approved in

14  1956, that's the descriptive plat that determines the size of

15  the subdivision.

16             THE COURT:  And what was the size in that 1956

17  subdivision?

18             MS. KONRAD:  Those potato fields were roughly 30

19  acres and each lot is a shy half acre, 67 lots of shy half

20  acres.

21             THE COURT:  But was there a square footage that was

22  set forth in the common scheme that you're relying on in '56?

23             MS. KONRAD:  Sir, I don't know the square footage

24  offhand, I have it but I don't know it.

25             THE COURT:  Is it your position that these

1  defendants, the municipal defendants, can't change their zoning

2  from that 1956 plan?  Is that part of this litigation?

3          MS. KONRAD:  Not in view of the fact that the

4  Village's own Planning Board had approved the subdivision in

5  three sections, which is perfectly In order according to

6  Village, Code 728.

7          THE COURT:  In 1956.

8          MS. KONRAD:  In 1960, 1966, and 1972.

9          THE COURT:  So they modified it, those three times?

10          MS. KONRAD:  No, there was no modification.  These

11  were different sections and that is --

12          THE COURT:  So my question to you is, is it your

13  position in this litigation that they don't have the legal

14  power to modify anything in that subdivision back in 1956?

15          MS. KONRAD:  No, they don't.  They're violating their

16  own documents too.  For example, the ARB gives permission to an

17  applicant and one of the criteria that they're supposed to

18  judge by, and that's in my papers, but I can of course give you

19  the entire code, is mass.  And the mass of these houses that

20  have come in since the zoning code of 2005 is roughly three,

21  three and a half times of the common plan and scheme.

22          Furthermore, the zoning code itself, the one that is

23  at the heart of this litigation, was illegally passed. Shall I

24  mention that?

25          THE COURT:  No.  You said in Article 78, so you

1  raised what sounds to me like a very, very similar issue

2  against the house behind you.  Then go through the other

3  litigation.

4           MS. KONRAD:  Not entirely.  They had not yet violated

5  the covenants that run with the land.

6           THE COURT:  Go through the next litigation.  What was

7  your next litigation?

8           MS. KONRAD:  That was Leos Lane.  It's a Florida

9  developer who built a large, massive house at 81 Leos Lane.

10          THE COURT:  Massive as I recall is about 4,700 square

11 feet.  Is that right?  I reviewed things before coming out.

12          MS. KONRAD:  I think that one is not quite that

13 massive.  I think it's probably 4,200 but it's hard to tell

14 because you see originally in that zoning code to which of

15 course I'm objecting --

16          THE COURT:  And when did you bring that case?

17          MS. KONRAD:  Sorry, sir?

18          THE COURT:  When did you bring that case?

19          MS. KONRAD:  I cannot hear you.

20          THE COURT:  Against the Florida developer.  When did

21 you bring that action, please?

22          MS. KONRAD:  That was in 2008.

23          THE COURT:  Okay.  And did you get a decision on the

24 merits in those cases?

25          MS. KONRAD:  Well, the Judge never decided on those

1  things.   The Judge decided only that the notice given for the

2  public hearing of the ARB had been proper.

3            THE COURT:  Was proper?

4            MS. KONRAD:  Well, --

5            THE COURT:  Are you saying proper or improper?

6            MS. KONRAD:  Had been proper but that was not the way

7  the issue was brought up.  I mean the Judge ruled on something

8  that was not contested.

9            THE COURT:  You lost that case.

10            MS. KONRAD:  Oh, yes.

11            THE COURT:  Okay.  What year was that?

12            MS. KONRAD:  2008.

13            THE COURT:  And the Article 78 in 2007, did you get a

14  decision on the merits in that case?

15            MS. KONRAD:  No, there was no decision on the merits.

16            THE COURT:  And what did that case --

17            MS. KONRAD:  The Village clerk sat on those papers

18  for five months and my --

19            THE COURT:  Village clerk doesn't decide Article 78

20  cases.

21            MS. KONRAD:  Excuse me?

22            THE COURT:  I said a Village clerk doesn't decide

23  Article 78 proceedings.

24            MS. KONRAD:  No, he said that the papers had been

25  lost and my attorney had served him personally and five months

1  later the Judge said -- decided that the case had been

2  improperly served.  And at that point, the Village attorney,

3  who's a defendant in this, called my lawyer to apologize and

4  said the papers had been found.

5            THE COURT:  Okay.  And you never initiated --

6            MS. KONRAD:  No merits, no question of merits.

7            THE COURT:  -- you never brought it back.  I mean

8  that would have been without prejudice.  You understand that?

9            MS. KONRAD:  That's correct.

10           THE COURT:  And now this is the third litigation.

11           MS. KONRAD:  No.

12           MR. BROWN:  No, Your Honor.  This is William Brown.

13           MS.KONRAD:  No.

14           MR.  BROWN:  She commenced an Article 78 against

15 myself and my wife for 17 Adams Lane.  In April of 2008, it was

16 dismissed on the merits with prejudice.

17           THE COURT:  And was there a decision?

18           MR. BROWN:  Yes.

19           THE COURT:  Ah.

20           MR.  BROWN:  I had submitted it along with my prior

21 letters to the Court detailing and I touched on all of these

22 issues.

23           THE COURT:  Okay.  All right.  Now, tell me about

24 your case for purposes of overview.

25           MS. KONRAD:  Of this particular?  Yes.  It is a case

1   to nullify the zoning code of 2005 based on, -- and that has

2   never been judged in any court whatsoever, based on the fact

3   that the decisive vote was cast by a trustee, a defendant in

4   this case, who had eight properties in the Village that were

5   immediately enhanced in value as a result of that zoning code,

6   which permitted the huge houses on small lots.  The other

7   deficiency in that code is that it was and is in violation of

8   the Village comprehensive code, comprehensive plan.

9           THE COURT:  How many are on the Board?

10          MS. KONRAD:  Sir?

11          THE COURT:  How many are on the Board?

12          MS. KONRAD:  I'm so sorry?

13          THE COURT:  What does the Board consist of?  If you

14  can hear better, don't hesitate to come up.  How many are on

15  the Board?

16          MS. KONRAD:  How many are on the which --

17          THE COURT:  How many Board members?

18          MS. KONRAD:  Oh, five.

19          THE COURT:  Five.  What was the vote?

20          MS. KONRAD:  The vote was 3-2.  The other vote for

21  the zoning code was Mayor Epley who's a defendant and Nancy

22  McGann who's a real estate agent who is on the Board as well

23  but the objection was brought, the warning was brought and

24  that's in my papers in a four page letter on the 4th of October

25  of 2005 by an attorney from Riverhead who had been hired by the

1  South Hampton Association to object to having Mr. Paul

2  Robinson, the former trustee, cast a vote in this matter

3  because of his obvious conflict of interest.

4          He also mentioned, of course the Marteno (phonetic)

5  case which would have cast doubt on Nancy McGann's vote as

6  well.

7          THE COURT:  What was the date of that vote, do you

8  recall?

9          MS. KONRAD:  That vote was November 10th, 2005.

10          THE COURT:  So that was about a little bit more than

11  seven years ago.

12          MS. KONRAD:  Actually, yes.  However, --

13          THE COURT:  Why did it take you so long?

14          MS. KONRAD:  Because I couldn't get a court to even

15  consider that part.  They were not --

16          THE COURT:  Have you considered the statute of

17  limitations here?

18          MS. KONRAD:  Yes, but I had no choice and further

19  more this is the code that is being applied still.  In fact, it

20  has been applied this very year to a house that is actually the

21  rear end of a property in the estate area, has never been part

22  of the South Hampton, of the Roscoe Place development and it is

23  suddenly going to be opening on Leos Lane in the Roscoe Place

24  development.  They are very anxious to get a critical mass and

25  that of course is what I'm trying to prevent.  However, may I

1  finish about what is illegal about the code?

2          THE COURT:  I was going to ask you if there's

3  anything else you would like to add?

4          MS. KONRAD:  Yes.

5          THE COURT:  This is overview.

6          MS. KONRAD:  So I mentioned, -- thank you, sir.

7          THE COURT:  Thank you for answering my questions.

8          MS. KONRAD:  I mentioned the conflict of interest.  I

9  mentioned that it was in total violation of the comprehensive

10 plan of the Village, which of course zoning is supposed to

11 implement and that comprehensive plan, the residents were very

12 concerned about larger houses, nothing as massive as this that

13 were appearing.

14         THE COURT:  Did you actually go along with other

15 people and testify at that hearing?

16         MS. KONRAD:  I'm sorry, sir.  I still can't --

17         THE COURT:  Did you attend that meeting on November

18 10th, 2005 and did you have an opportunity to be heard at that

19 meeting?

20         MS. KONRAD:  Sir, that was a closed meeting and

21 that's the third point, because that meeting was held in

22 violation of Section 106 of the Open Meetings Act which says

23 that minutes have to be filed within 15 days of a meeting and

24 there were no minutes.  It was a closed meeting.  Two trustees

25 who are no longer on the Board gave me their affidavits about

1  the vote, but of course it was pushed through and they were

2  against it.  They were the opposition party.  One is an

3  attorney, the other is a local businessman.

4          THE COURT:  Anything else you would like to add?

5  Then I'm going to ask the defendants for their overview.

6          MS. KONRAD:  Only the fact that even though it was

7  passed before the statute of limitations, I mean, that the

8  statute of limitations on fraud has gone past, they're

9  enforcing the same zoning code in my subdivision.  Furthermore,

10 I am also objecting for a number of the methods they're using

11 to enforce this code.  It's not only that the code is illegal,

12 it's that the methods are.  All right.  Thank you, sir.

13         THE COURT:  You're very welcome.  If I could hear

14 from the defendants.  Is there a statute of limitations issue

15 here?

16         MR. ARNTSEN:  Judge, I believe there is a statute of

17 limitations issue.  I believe the Court has highlighted several

18 of the points and the questioning that we would like to address

19 on a Rule 12 motion.  And it is my understanding I think that

20 this conference is to serve as a pre-motion conference for that

21 as well.

22         THE COURT:  It is.

23         MR. ARNTSEN:  Res judicata, because of the prior

24 litigations, failure to state a cause of action and a claim.

25         THE COURT:  You can only raise that with regard to,

Arnsten/Argument                              15

1   you know, I think Mr., is it Mr. Morrison (sic) who's on the

2   phone would have a better opportunity to raise that then the

3   individual who is the defendant in the 2007 case of the Florida

4   developer, no?

5          MR. ARNTSEN:  Yes, Your Honor, I would agree with

6   that.  That's just one of the myriad of defenses that come up

7   in the case.  Legislative immunity to the two legislative

8   defendants.

9          THE COURT:  Ah.

10         MR. ARNTSEN:  Is another defense.  As I said, I think

11  Your Honor has kind of comprehended what the defendant's

12  position is with respect to the viability of the complaint and

13  the claims therein.  And our most pressing issue, I would

14  suggest today, is in light of the plaintiff's letter motion to

15  amend the complaint, which has been opposed by several of the

16  defendants here, we simply need to know because we have not

17  answered nor have we filed yet a Rule 12 motion.  She perhaps

18  has the right to amend as of right, as against my clients.

19         THE COURT:  You know, I got your letter that was

20  filed last night or yesterday sometime.  Did the plaintiff also

21  get that letter?  I don't want to disadvantage you.

22         MS. KONRAD:  The one that mentioned that I had the

23  right to file the motion, that there had been no answer to the

24  Court.

25         THE COURT:  Yes, I checked that out.

1           MS. KONRAD:  Yes, I'm aware of that.

2           THE COURT:  And Mr. Morrison, the sole pro se in this

3  case filed an answer in this case on --

4           MR. BROWN:  Mr. Brown, Your Honor.

5           THE COURT:  Excuse me, Mr. Brown.  I don't know why I

6  have you as a Morrison, but pardon me, on September 4th,

7  according to the docket sheet.

8           MR. ARNTSEN:  Yes, I think another defendant has

9  answered as well.

10          THE COURT:  So that would actually knock it out of

11 that situation.

12          MR. ARNTSEN:  And I was not clear on that, Judge.  I

13 just know that I haven't answered yet.  But again, if that's

14 the case and the Court is inclined to deny plaintiff's motion

15 to amend, then I would just need --

16          THE COURT:  Well, I'm not inclined to deny it.  I'm

17 inclined to ask Ms. Konrad to go through the leave application

18 process.  I don't think there is a right to file an amended

19 complaint since there have been answers filed in the case.

20          MS. KONRAD:  Sir, the answers were procedurally

21 deficient.  However, I was trying to save this Court's time

22 because the gentleman in the middle was right when he had said

23 that 1981 does not apply.  I was trying to fight a question of

24 having to file rather quickly and so I made a mistake and I

25 apologize for that.

1          THE COURT:  You'll be free to modify your complaint

2   if you did make a mistake and that would be all part of, you

3   know, your application.

4          MS. KONRAD:  That's what I did.

5          THE COURT:  Certainly if it inures to the defendant's

6   favor, which is the impression I'm getting, then I'm sure

7   there's not going to be any objection.

8          MS. KONRAD:  Well, they do seem to be objecting.

9   However, Your Honor, I do want to say that the statute of

10  limitations is not relevant to this zoning code because it is

11  being currently applied.

12         THE COURT:  Okay.  Mr. Arntsen, are you finished as

13  far as anything you would like to say for purposes of overview?

14         MR. ARNTSEN:  For purposes of overview, Your Honor,

15  no thank you.

16         THE COURT:  Who are your clients?

17         MR. ARNTSEN:  Epley --

18         THE COURT:  The positions.

19         MR. ARNTSEN:  Epley was the Mayor and still is the

20  Mayor of the Village.  Paul Robinson is a former trustee of the

21  Village.  And Elbert Robinson is an assistant town attorney

22  with the Village.

23         THE COURT:  The other defendants for purposes of

24  overview?  And if you could tell me the position of the person

25  that you represent, it would be helpful.

1           MR. MALONE:  Yes, Your Honor, Daniel Malone on behalf

2  of Donald Quintin and Melinda Quintin.

3           THE COURT:  The positions?

4           MR. MALONE:  I'm sorry.  They own the home at 37 Leos

5  Lane.  Is that the answer?

6           THE COURT:  That's the big house.

7           MR. MALONE:  Well, beauty is in the eye of the

8  beholder.

9           THE COURT:  The alleged big house.

10          MR. MALONE:  The alleged big house.

11          MS. KONRAD:  The alleged big house.

12          THE COURT:  You want to tell me about your clients

13  for purposes of overview?  What do you see as the issues here?

14          MR. MALONE:  Sure.

15          THE COURT:  What's going on?  When did they build

16  their house?

17          MR. MALONE:  My clients didn't build the house, Your

18  Honor.  My clients bought the house, I believe in 2010.

19          THE COURT:  And do you know when it was built?

20          MR. MALONE:  Well, I'm not sure exactly when it was

21  built, but as I understand the Article 78 proceedings

22  concerning it, took place in 2007 so I guess that gives some

23  sense of when it was built.

24          THE COURT:  2007.  Plaintiff you know is relying on

25  that old case where the skyscraper, they had to tear down the

1  top 20 stories.

2              MS. KONRAD:  12 stories.

3              THE COURT:  12 stories, I stand corrected.

4              MR. BROWN:  Your Honor?

5              THE COURT:  Yes, sir?

6              MR. BROWN:  Oh, I apologize for interrupting.  I

7  would suggest when you get to me that that case is also not on

8  point.

9              THE COURT:  Sure.  I will get to you.

10             MR. BROWN:  Thank you.

11             MR. MALONE:  Your Honor, I'm not sure that case is in

12  point either.  But at any rate, aside from the overall

13  deficiencies of Ms. Konrad's attacks, the particular concerns

14  of my clients here, which I suppose it's my job to voice, is

15  that nothing in the complaint actually suffices to establish

16  State action in any claim concerning my clients.  And because

17  of that, and because that's a requirement of all the claims

18  that the plaintiff seeks to make against my clients, there's no

19  basis for federal jurisdiction in a case against my client.

20             THE COURT:  Okay.  Any other issues that you

21  anticipate?

22             MR. MALONE:  Well, if we were to get to it, I think

23  the statute of limitations is an issue.  I think the fact that

24  the covenants don't effectively limit how size might be an

25  issue.  But to me those are more merits matters that I wouldn't

Foley/Argument                                    20

1  necessarily expect to get to in a motion to dismiss.

2           THE COURT:  And the third defendant who's represented

3  by counsel here.

4           MR. FOLEY:  I'm from Denis Guerin's office

5  representing defendant --

6           THE COURT:  Take the mic, okay?

7           MR. FOLEY:  From Denis Guerin's office representing

8  Denis Guerin in this case.

9           THE COURT:  And any position.

10          MR. FOLEY:  His position is he objects to all

11 allegations by the plaintiff.

12          THE COURT:  Position what is he, is he a town

13 trustee?

14          MR. FOLEY:  Oh no, he's the owner of 7 South Roscoe

15 Drive.

16          THE COURT:  And how does that person figure into this

17 under the allegations?

18          MR. FOLEY:  That's what we're trying to figure out,

19 Your Honor.

20          THE COURT:  And how long has he owned the property?

21          MR. FOLEY:  I don't have that information at hand,

22 but I believe it's close to 10 years.

23          THE COURT:  And do you have issues?

24          MR. FOLEY:  His position at this time is that he

25 would like to make a motion to dismiss.

1          THE COURT:  That's why I asked you the issues.

2          MR. FOLEY:  The issues, we don't know what the issues

3   are, Your Honor.  His house is a small house.

4          THE COURT:  You don't know what the issues are, but

5   you want to make a motion to dismiss, is that your position?

6          MR. FOLEY:  Well, the plaintiff is claiming --

7          THE COURT:  I'm going to have to deny your

8   application if that's what your position is at this conference.

9          MR. FOLEY:  No, that's not our position, Your Honor.

10  Our position is, is that his house in its current state is not

11  a macmansion as plaintiff is alleging.  And his further

12  position is that --

13         THE COURT:  What is the name of your client?

14         MR. FOLEY:  Denis Guerin.

15         THE COURT:  Go ahead.

16         MR. FOLEY:  As far as the zoning requirements, Mr.

17  Guerin believes that his house does come under the relevant

18  zoning requirements and is valid for all purposes.

19         THE COURT:  You didn't put much preparation into this

20  conference, did you?

21         MR. FOLEY:  Is there a specific question --

22         THE COURT:  It's the pre-motion conference.

23         MR. FOLEY:  I understand that, Your Honor.

24         THE COURT:  You're supposed to advise the Court what

25  the issues are that you want to raise and/or discuss.

1          MR. FOLEY:  We're alleging the same issues that the

2    other defendants are alleging as well.

3          THE COURT:  Thank you.  And last but not least we

4    have the pro se defendant on the phone.

5          MR. BROWN:  Yes, Your Honor, William Brown.

6          THE COURT:  Mr. Brown.  Mr. Brown, would you like to

7    be heard, sir?

8          MR. BROWN:  I would, thank you.  I am a private

9    citizen and co-owner along with my wife, Alicia Brown of the

10   property at 17 Adams Lane.  Would you like me to lay forth

11   towards my issues with the complaint or with respect to the

12   proposed amendment?

13         THE COURT:  Sure.  I know you have some issues.

14   You're also seeking to make a motion to dismiss, is that right,

15   and you're also opposing --

16         MR. BROWN:  I have not, Your Honor, made a motion to

17   dismiss.  I have written a letter which could be interpreted as

18   a letter motion requesting denial of the amendment.

19         THE COURT:  Okay.  I was about to say I know you're

20   opposed to your wife coming in.

21         MR. BROWN:  Yes, Your Honor.

22         THE COURT:  In all likelihood, if the property is

23   owned jointly, you know, it would seem to be a reasonable way

24   to, -- strike that.  Your wife is probably a necessary party

25   and I say that without in any way opining with regard to the

1 merits of the application in any other regard or the merits of

2 the complaint in this case.  But if she jointly owns the

3 property with you, by agreeing to let her amend it, to bring

4 her, in that doesn't mean that you can't oppose whatever

5 application is made and you certainly have the right, and she

6 does, to move to dismiss but I'll leave that up to you.

7          MR. BROWN:  Yes, Your Honor.  May I lay forth the

8 basis as to why I believe that it should not be amended

9 pursuant to law?

10         THE COURT:  Sure, go right ahead.

11         MR. BROWN:  Okay.  The reason is fairly simple.  My

12 understanding is that there's precedent that places burden on

13 the party seeking to amend when it is no longer an amendment of

14 right, to provide satisfactory explanation for the delay, which

15 she failed to do.  It is also my understanding that it can be

16 denied if it is a prejudice to the nonmoving party which of

17 course it would be, myself and by the way, for bad faith or

18 futility.  And I would suggest to you that it would be futile

19 because of the many reasons why this petition does not have

20 merit on the most basic level.

21         THE COURT:  Okay, well, you're going to have to raise

22 those issues.

23         MR. BROWN:  Okay.

24         THE COURT:  Okay.  And you can raise those.  Your

25 wife isn't in the case so she can't raise them but you, surely,

1   feel free.  All right, let's set a schedule here.  What I would

2   like to do, we have two things, we have two motions.  The way

3   I'm going to set it up is movant, opposition, reply.  And one

4   motion it's the plaintiff who is the moving party and the

5   defendants, any defendant who opposes, obviously would file

6   opposition and then it goes back to the plaintiff.  On the

7   exact same schedule, we have a motion under 12(b)(6) or 12(b)

8   or 12(c) whatever you're making and it will be on the same

9   schedule except you'll be the moving parties to the extent that

10  any of the defendants want to make a motion to dismiss, and

11  then opposition by Ms. Konrad and reply by the defendant.

12          So I would be glad to take some suggestions.  I don't

13  want to jam up anybody's holiday season here.  If anyone has

14  any suggestions, I don't know if you discussed among yourselves

15  any kind of a proposed schedule, I would be glad to hear it.

16  If I could hear from the plaintiff.

17          MS. KONRAD:  Well, I am struck by the fact that the

18  two gentlemen who represent the owners haven't a clue about

19  what the case is about, may not have read the papers.

20  Therefore I don't see, since they have wasted your time and I

21  have attempted not to, why you are admitting any motion to

22  dismiss on their part.

23          THE COURT:  Let me tell you why.

24          MS. KONRAD:  May I clarify what the issues are?

25          THE COURT:  Because I don't want to decide this case

                              Colloquy                         25

1    twice.

2              MS. KONRAD:  May I address what the issues are?

3              THE COURT:  You don't have to address, you want to

4    amend with regard to Mrs. Brown, do you not?

5              MS. KONRAD:  Well, they are, in the amended complaint

6    they are quite clear.

7              MR. BROWN:  Your Honor, may I speak?

8              THE COURT:  All right.

9              MR. BROWN:  The amended complaint as the plaintiff

10   put before the Court procedurally was a request to add my wife,

11   Alicia Brown as defendant.  This most recent submission by the

12   plaintiff presented a draft complaint and that draft complaint

13   represents and sets forth entirely new legal theories and is a

14   complete deviation not just the name of defendant, but in the

15   complaint set forth.

16             THE COURT:  All right.  Just to make things clear,

17   the plaintiff is entitled in her motion for leave to file an

18   amended complaint to raise any issues she feels are warranted

19   by this action.  So she's not limited to that draft that you

20   have before her or anything else.

21             MR. ARNTSEN:  Your Honor, if I may and this is on the

22   procedural point.

23             THE COURT:  Thank you very much.

24             MR. ARNTSEN:  About scheduling, Judge.  As I raised

25   in my letter of yesterday, my concern about having a kind of a

1  concurrent motion drafting schedule is, if the Court grants the

2  plaintiff's motion to amend, and I'm at the same time making a

3  Rule 12 motion to dismiss the original complaint, my motion

4  will be deemed moot by virtue of the Court's grant of the

5  amendment, I'll have to do a second motion, if I intend to move

6  against the amended complaint.  So what I would like to avoid

7  is moving against the first complaint if in fact the first

8  complaint will be superceded by the second and make one Rule 12

9  motion.

10        THE COURT:  The only issue that's raised by the

11 motion to amend is that portion of it addressing the motion to

12 the amended portion.

13        MR. ARNTSEN:  Right.

14        THE COURT:  That's why I don't see the problem that

15 you see.

16        MR. ARNTSEN:  Well, as Mr. Brown had just mentioned,

17 the draft that we were provided with --

18        THE COURT:  Forget that draft.  Plaintiff isn't bound

19 by that draft.  Plaintiff can raise any issue she wants to on a

20 motion to amend.

21        MR. ARNTSEN:  I agree, Your Honor.  I understand

22 that.  But if in fact the plaintiff comes in a motion to amend

23 the complaint with additional different issues, maybe adding in

24 parties that are not yet before the Court, my Rule 12 motion to

25 dismiss the original complaint --

Colloquy                          27

1        THE COURT:  No, but you're going to oppose that, no?

2        MR. ARNTSEN:  Until this morning --

3        THE COURT:  And to the extent that it's not opposed,

4  then you're agreeing that it belongs there.

5        MR. ARNTSEN:  And as I suggested at the outset, I

6  wasn't clear from my own standpoint, since I had not yet

7  answered nor interposed a motion, if the plaintiff was

8  prohibited from amending as of right as against me, you

9  clarified that this morning, Judge.

10        THE COURT:  This is a leave, yes.

11        MR. ARNTSEN:  So she's now being given permission to

12  make a formal motion to amend.  I would simply like to defer

13  until the Court decides that motion.  If you deny it --

14        THE COURT:  I don't want to prolong this.  I don't

15  want to carry this litigation out any longer than it's

16  necessary.  Quite frankly, Ms. Konrad, some of the legal

17  concepts that you're pursuing here are to my experience very,

18  very questionable as far as municipal law is concerned.

19        MS. KONRAD:  Sir, I don't --

20        THE COURT:  I would like to resolve these threshold

21  issues as quickly as possible.  This is costing the individuals

22  a lot of time and money.  I don't like to see an attorney who

23  takes advantage of one's position as an attorney to do legal

24  work for free, to repeatedly come back and litigate issues that

25  may be very, very similar if not identical.  So that's why I

1  would like to dispose of these motions and find out where this

2  case is really at, earlier rather than later.

3            MR. ARNTSEN:  Your Honor, if I may?

4            THE COURT:  Go ahead.

5            MR. ARNTSEN:  Just again in terms of procedure.  The

6  plaintiff is going to proceed with a motion to amend and I

7  would expect that we would be opposing that motion on the

8  ground of futility, if nothing else.  And that in doing so,

9  that that would raise the legal issues that might otherwise be

10  raised by a motion to dismiss.

11            THE COURT:  Solely with regard to the issues that she

12  seeks to add.  That's all that you're going to address in your

13  opposition to her motion to amend.  I don't know why this is so

14  complicated for counsel.

15            MR. ARNTSEN:  I think Your Honor, maybe the fact that

16  I'm unclear on is, while I understand Your Honor's, you know,

17  statement about the amendment focusing on new issues, my

18  understanding is if that there's an amended pleading filed, the

19  original pleading is a nullity.  And it's only the amended

20  pleading with which the Court and the parties will be dealing

21  with issues.  So if there's a motion that I have made pending,

22  a motion that I've made that addresses issues raised in the

23  original complaint, that is ultimately deemed to be a nullity,

24  in fact the money and time waste will be at my client's expense

25  for having me made a motion and then I would be required to

1   make a second motion against the pleadings that superceded.

2          THE COURT:  I'm going to say this a second or third

3   time and a last time.  Anything new in the motion to amend will

4   be addressed by your opposition, assuming you want to oppose

5   it.  You don't want to oppose it, then that's fine.  So all

6   issues will be resolved.

7          MR. BROWN:  Your Honor, may I ask a question?

8          THE COURT:  Yes, sir.

9          MS. KONRAD:  May I make one point, Your Honor?

10         MR. BROWN:  Yes, Your Honor.  I was wondering if you

11  could tell me, I'm obviously in opposition to the motion to

12  amend.  May I within my response and counter pursuant to 12(b),

13  I want to say (6), but essentially a motion to dismiss on the

14  merits or would that be a separate motion?

15         THE COURT:  On the merits?  We can't get to the

16  merits now.

17         MR. BROWN:  Okay.

18         THE COURT:  A motion to dismiss and what I would

19  suggest you do is talk to defendant's counsel, because you'll

20  find them knowledgeable with regard to the types of issues you

21  can raise.  But basically a 12(b)(6) motion says to the Court

22  that either there aren't adequate facts that are set forth to

23  set forth a plausible cause of action.

24         MR. BROWN:  Sure.

25         THE COURT:  Or alternatively, that assuming all the

1  facts that are set forth, this action would be futile for the

2  following reasons.

3           MR. BROWN:  Excellent, thank you, Your Honor.

4           THE COURT:  Okay?

5           MR. BROWN:  And I'm assuming under that and I will do

6  that, but I assume that 9(b) and jurisdictional and all the

7  other failings could be addressed under the same?

8           THE COURT:  You can raise any jurisdictional issues

9  you feel are appropriate.

10           MR. BROWN:  Thank you.

11           THE COURT:  What you can't raise is your version of

12  the facts as opposed to the plaintiff's version of the facts.

13           MR. BROWN:  Understood.

14           THE COURT:  Okay?  Good.  Did you represent yourself

15  in that prior litigation?

16           MR. BROWN:  No, I just have extensive experience

17  being sued by the plaintiff.

18           THE COURT:  Okay.

19           MS. KONRAD:  Your Honor, may I make one point,

20  please?  Because it would be an unfair conclusion.  Not a one

21  of the issues raised in either one, the original complaint or

22  this amended which I'll be refiling of course, has ever been

23  adjudicated by any court.  I would not be wasting your time

24  that way.

25           THE COURT:  All right.

Colloquy                                31

1            MR. BROWN:  Your Honor, I respectfully disagree.

2            THE COURT:  All right.  Let's set a schedule.  Anyone

3    want to be heard or would you like me to set a schedule?

4            MS. KONRAD:  I have a procedural question, too.

5            THE COURT:  I welcomed your input but I can't force

6    it.

7            MS. KONRAD:  I have a procedural question.

8            THE COURT:  Sure.

9            MS. KONRAD:  I mentioned that I have been invited to

10   Germany in honor of my father and the dates are the week of

11   Martin Luther King.  And I wanted to know whether this will in

12   any way interfere with what we are doing here.  How much time

13   do I have?  Because I assume that's the first motion to come

14   before you, to file my leave for amended complaint along with a

15   new draft of this complaint with the exhibits?  How long do I

16   have for that?

17           THE COURT:  All right.  You tell me how much time you

18   need in light of your trip to Germany.  When would you like to

19   file that?  Would you like to file it before you go to Germany?

20           MS. KONRAD:  Yes, I can do that but I don't want the

21   answers to come while I'm away.  In other words, I would not

22   like to have it count against me.

23           THE COURT:  When would you like to file?

24           MS. KONRAD:  Well, is it all right if I say 15th of

25   January?

Colloquy                          32

1        THE COURT:  That's very, very short.

2        MS. KONRAD:  Is that all right?

3        THE COURT:  That's very, very short.

4        MS. KONRAD:  Oh, well, all right, then let's make it

5   after I'm back, the 5th of February.  I don't have a date book

6   in front of me.

7        THE COURT:  Let's say the end of that week, February

8   8th will be movant's --

9        MS. KONRAD:  Will be what?

10       THE COURT:  The movants as I described it earlier,

11  the movant's opposition reply.

12       MS. KONRAD:  I'm sorry, I don't get that.

13       MR.  BROWN:  Plaintiff would file by February 8th,

14  Your Honor?

15       THE COURT:  And then opposition, yes, that would be

16  the moving --

17       MS. KONRAD:  That will be my motion?

18       THE COURT:  That would be the motions to dismiss and

19  the address to the existing complaint and the motion to amend.

20  And then opposition 30 days adequate?

21       MR. BROWN:  Yes, Your Honor, thank you.

22       MR. ARNTSEN:  Yes, Your Honor.

23       THE COURT:  March 8th and then a reply two weeks,

24  3/22?  That will be the schedule.

25       MR.  BROWN:  Your Honor, may I ask for simple

Colloquy                                33

1  clarity.

2           THE COURT:  Sure.

3           MR.  BROWN:  Plaintiff is to submit her motion to

4  amend any amended complaint as proposed by February 8th.

5  Defendants including myself would reply to that motion by March

6  8th.

7           THE COURT:  Opposed, right.

8           MR.  BROWN:  Plaintiff would then have a second

9  response due by March 22nd.

10           THE COURT:  And that's called a reply.

11           MR.  BROWN:  Yes.  Thank you.

12           THE COURT:  Now, on that same schedule, if any party

13  wants to make a motion to dismiss, they will file their papers

14  as a movant on February 8th and then plaintiff will oppose

15  anything she seeks to oppose on March 8th and a reply by the

16  moving defendants on 3/22.  I don't know why this got so

17  complicated.

18           MR. BROWN:  May I ask Your Honor?  I believe now to

19  me the reason why it was complicated is clear.  If we're not

20  going to see her amended proposed complaint until February 8th,

21  we wouldn't be able to respond with a motion to dismiss on that

22  same day.

23           THE COURT:  Okay.  We've already been there and

24  covered that ground.  Okay, anything else?  I'm going to stay,

25  sua sponte, I'm going to stay all discovery in this case

1    pending a determination as far as who the relevant parties are

2    to the case and what the relevant causes of action.  Everything

3    is based on due process of law, is it not?

4              MS. KONRAD:  Of course.

5              THE COURT:  Okay.

6              MS. KONRAD:  Also equal.

7              MR. ARNTSEN:  Your Honor, and I believe that the

8    docket entries from Judge Bianco, you'll be deciding all of the

9    motions, correct?

10             THE COURT:  I believe that's true.

11             MR. ARNTSEN:  Thank you, Your Honor.

12             THE COURT:  I don't know if Judge Bianco was aware

13   that plaintiff is an attorney.

14             MS. KONRAD:  Does it matter, sir?

15             THE COURT:  Pardon me?

16             MS. KONRAD:  Does it matter?

17             THE COURT:  I think it may have been the reason for

18   the referral over.  All right.  Okay.  Well, thank you all for,

19   anything else anyone would like to raise?

20             MR. ARNTSEN:  No, thank you, Judge.

21             MR. MALONE:  Thank you, Your Honor.

22             MR. BROWN:  Thank you, Your Honor.

23             THE COURT:  All right.

24                       *  *  *  *  *

25

1 **C E R T I F I C A T I O N**

2

3           I, Tracy Gribben, court approved transcriber, certify

4 that the foregoing is a correct transcript from the official

5 digital audio recording of the proceedings in the

6 above-entitled matter.

7

8 _____

9 TRACY GRIBBEN

10 TERRY GRIBBEN'S TRANSCRIPTION SERVICE DATE: **January 15, 2013**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25