UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EVELYN KONRAD,

                                   Plaintiff,                  REPORT &
                                                        RECOMMENDATION
       -against-                                    CV 12-4021 (JFB)(ETB)

MARK EPLEY, Individually and in his capacity as Mayor
of the Village of Southampton, PAUL ROBINSON,
Individually and as former Trustee of the Village of
Southampton, ELBERT W. ROBINSON, JR., Individually
and in his capacity as Assistant Attorney for the Village of
Southampton, WILLIAM BROWN, resident of the Rosko
Place subdivision, in the Village of Southampton, DENIS
GUERIN, owner of a property in the Rosko Place subdivision,
in the Southampton Village, DONALD QUINTIN and MELINDA
QUINTIN, owners of a property in the Rosko Place subdivision
in the Village of Southampton,
                                   Defendants.
------------------------------------------------------------------------X

TO THE HONORABLE JOSEPH F. BIANCO, UNITED STATES DISTRICT JUDGE:

       There are four motions presently before the Court: (1) defendants' motion to dismiss the

complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that

the Court lacks subject matter jurisdiction over this dispute and that plaintiff has failed to state a

claim upon which relief can be granted; (2) plaintiff's motion to amend the complaint; (3)

plaintiff's motion for sanctions against defendant William Brown and counsel for defendants

Mark Epley, Paul Robinson, Elbert W. Robinson, Jr., Denis Guerin, Donald Quintin, and

Melinda Quintin; and (4) defendants William Brown's and Elbert W. Robinson, Jr.'s cross-

motions for sanctions against plaintiff. For the reasons set forth below, I recommend that

defendants' motions to dismiss the complaint be granted in their entirety, that plaintiff's motion

to amend the complaint be denied, and that all pending motions for sanctions be denied in their

entirety. Further, the Court sua sponte recommends that plaintiff be warned against filing any

1

future actions against the Village and/or homeowners within the Rosko Place subdivision in

federal court, at the risk of being permanently enjoined from such filings and being sanctioned.

<u>FACTS</u>

I.   Background

  This action was commenced by plaintiff, Evelyn Konrad (hereinafter "plaintiff" or

"Konrad") on August 13, 2012.  Complaint at 1.[1]  Konrad is the owner of a self-described "little

house" located at 18 South Rosko Drive within the Rosko Place subdivision of the Village of

Southampton ("the Village"), in Suffolk County, New York.  <u>Id.</u> at ¶¶ 1, 4, 22.  Defendants Mark

Epley, Paul Robinson, and Elbert W. Robinson Jr. are current and former officials of the Village

of Southampton (collectively, "the Village defendants"), and are being sued in both their official

and individual capacities.  <u>Id.</u> at 1, ¶ 23-25.  Defendants Denis Guerin ("Guerin"), William

Brown ("Brown"), and Donald and Melinda Quintin ("the Quintins"), are homeowners in the

Rosko Place subdivision (collectively, "the homeowner defendants") whose properties are

located at 7 South Rosko Drive, 17 Adams Lane, and 37 Leo's Lane, respectively.  <u>Id.</u> at ¶ 26-

28.[2]  According to plaintiff, the Village and homeowner defendants violated her contractual, due

---

  [1] In spite of plaintiff's apparent desire to the contrary (insofar as she has relied exclusively on her proposed amended complaint, rather than the complaint, in her motion papers), the Court must rely upon the facts as presented in the original complaint, as it is the only operative complaint in this action.  <u>See, e.g.</u> <u>Azkour v. Haouzi</u>, No. 11 Civ. 5780, 2013 U.S. Dist. LEXIS 91415, at *8-9 n. 3 (S.D.N.Y. June 28, 2013) (noting that, although <u>pro se</u> plaintiff relied on a proposed fifth amended complaint in opposing defendants' motion to dismiss, the Court instead looked to the third amended complaint – the last amended pleading for which plaintiff had the Court's permission to file – to determine the relevant facts).

  [2] The Court notes that, although Brown is alleged to be the owner of 17 Adams Lane within the complaint, submissions to the Court by both Konrad and Brown indicate that Brown sold the 17 Adams Lane property in or around April of 2013, and is no longer the owner.  <u>See</u> Defendant Brown's Reply Memorandum in Opposition to Plaintiff's Motion for Leave to Amend ("Brown Memo in Opp. to Amend") at 5; <u>see also</u> Correspondence of Evelyn Konrad dated June 12, 2013 [Docket Entry No. 90].

process, and civil rights, and committed various violations of New York State law, when the

Village defendants passed a zoning ordinance permitting the construction of homes with living

space in excess of 4,500 square feet within the Village on November 10, 2005 ("the 2005 Zoning

Ordinance"), and, on various subsequent dates, when the homeowner defendants, with the

approval of the Village defendants, constructed homes that were in compliance with the 2005

Zoning Ordinance on their lots within the Rosko Place subdivision.  Id. at ¶¶ 2-19, 212.


       A)     <u>The Rosko Place Subdivision</u>

        According to plaintiff, the descriptive plat for the Rosko Place subdivision was

first filed with Suffolk County in 1956 by developer Leo Rosko and the subdivision was

approved by the Village in 1960, Complaint at ¶¶ 40, 41.  The Rosko Place subdivision "consists

of 67 lots, all shy half-acres."  Id. at ¶ 43.  According to plaintiff, in November of 1962,

developer Leo Rosko and his partner, John A. Borucke, filed covenants that run with the land

within the Rosko Place subdivision with the Suffolk County Clerk.  Id. at ¶ 42.  These covenants

included a requirement that construction on each lot within the subdivision be restricted to a

single family home and garage, as well as a prohibition on the construction of any other

"accessory buildings" other than "a children's playhouse in the rear yard at least 25 feet from the

property line."  Id.  Plaintiff claims that these covenants constitute terms of a "contract" to which

plaintiff has a "constitutionally protected right."  Id. at ¶ 127.

The Rosko Place subdivision, when first constructed, was made up of "either small

ranches, less than 1,500 sq. ft., or small colonials, not larger than 2,300 sq. ft.," and there were

no additional structures on any of the properties within the subdivision other than single car

garages.  Id. at ¶ 46.  According to plaintiff, "[a]nyone going through the Rosko Place

3

subdivision before 2005, either on foot or by vehicle, was immediately put on notice of the

common plan or scheme for the subdivision," which was typified by "small ranches and

colonials" and a lack of accessory buildings on the 67 lots within the subdivision.  Id. at ¶ 46-47.

 

 

B)    The 2005 Zoning Ordinance and Subsequent Changes to Village Procedures

        In 2005, defendant Epley was elected Mayor of the Village.  Complaint at ¶ 49.

In that same year, according to plaintiff, the Epley administration proposed a change to the

Village's zoning ordinances.  Id.  The proposed change ("the 2005 Zoning Ordinance"), which

would permit the construction of larger homes on smaller lots, was vigorously opposed by

plaintiff and by other community members, including a local civic organization known as the

Southampton Association.  Id. at ¶ 49-52.  Plaintiff maintains that defendant Paul Robinson

("Trustee Robinson"), as a Village Trustee and as owner of eight properties likely to be affected

by the 2005 Zoning Ordinance, had a conflict of interest, and should have been barred from

voting on the Ordinance by defendant Epley.  Id. at ¶ 51.  A letter to that effect was sent to Epley

by John Shea, attorney for the Southampton Association, in October of 2005.  Id.  Regardless,

the 2005 Zoning Ordinance was voted upon by the Mayor and Village Trustees, and was passed

by a vote of three to two on November 10, 2005.  Id. at ¶ 52.  Plaintiff alleges that the 2005

Zoning Ordinance: (1) violates a previously-existing Village Comprehensive Plan that expressed

a preference for "smaller-scale" construction; (2) should not have been voted upon by Trustee

Robinson because of his conflict of interest; and (3) was conducted in violation of prevailing

open meeting laws.  Id.  Plaintiff additionally asserts that Trustee Nancy McGann, a non-party,

should likewise have been excluded from voting on the 2005 Zoning Ordinance because she is a

realtor by occupation.  Id. at 54.

Plaintiff also alleges that defendant Epley "made sure that all of the Southampton Village boards and committees would decide in lock-step with [Epley's] Administration's objectives of substituting huge houses for the currently small and middle class houses throughout the Village... by naming nothing but members of the real estate industry to the administration's varying boards."  Id. at ¶ 55.  Although plaintiff's complaint does not provide a clear timeline, plaintiff appears to be alleging that this occurred simultaneously with and/or shortly after the passage of the 2005 Zoning Ordinance.  Id.  Plaintiff claims, in particular, that Epley's appointment of non-party Curtis Highsmith – whom plaintiff incorrectly identifies as a "defendant" within the body of the complaint – to the Village Board of Architectural Review and Historic Preservation ("the ARB") resulted in changes in the ARB's rules of procedure that made it more difficult for plaintiff to challenge the construction of "huge houses on small lots, especially in the Rosko Place subdivision."  Id. at ¶ 56.  Plaintiff further states that the Epley administration implemented numerous procedural changes that encouraged and enabled the development of larger homes in the Rosko Place subdivision and throughout the Village, and that defendant Elbert W. Robinson Jr. ("Attorney Robinson"), attorney for the Village, interfered with and prevented plaintiff and others from participating in public hearings at which plaintiff and others opposed such development.  Id. at ¶ 58-59.  It is plaintiff's position that these procedural changes, as well as Attorney Robinson's actions, violated her constitutional right to due process. Id. at ¶ 58.  Although plaintiff does not specify when these particular events occurred, plaintiff does provide a series of examples where the 2005 Zoning Ordinance and other procedural changes were applied to permit the construction of "overbuilds which violated the common

5

scheme and plan of the Rosko [Place] subdivision." Id. at ¶ 63; ¶ 60-63.[3]  Given that these examples trace back to at least 2007, id. at ¶¶ 60 & 64, and that plaintiff attributes these changes to "the Epley administration," id. at ¶ 57-58, it appears that these procedural changes were implemented at some point between 2005, when defendant Epley was elected to Village Mayor, and 2007.

  C)  <u>Construction by the Homeowner Defendants</u>

   All of the homeowner defendants are alleged to have engaged in construction on lots within the Rosko Place subdivision of the Village. Complaint at ¶ 14, 16.  In all cases, the construction alleged was conducted with the permission of the Village ARB.  Id. at ¶¶ 131, 174, 205, 206.

   With regard to the Quintins, owners of the property at 37 Leo's Lane, they received permission from the Village ARB in 2011 to enlarge the existing pool house located on their property, and did so.  Id. at ¶ 20.  The Quintins' property is located directly behind plaintiff's property at 18 South Rosko Drive.  Id. at ¶ 131.  Plaintiff alleges that, in the course of enlarging their pool house, the Quintins removed certain trees and landscaping, which had the effect of depriving plaintiff's property of "privacy, thus making the house and property uninhabitable during when [sic] nine months when the [remaining shrubbery] sheds its leaves."  Id.  Plaintiff alleges that the Quintins violated her contractual rights by engaging in this construction, as the current incarnation of the Quintins' home no longer matches "the character of the Rosko Place subdivision, to which [p]laintiff was and is contractually entitled."  Id. at ¶ 157.

---

  [3] The Court notes that none of the owners or builders of the particular properties described in ¶¶ 60-63 are named as defendants in the complaint.

According to plaintiff, defendant Brown, the (prior)[4] owner of the property at 17 Adams Lane, was responsible for the construction of a "giant new house with [an] illegal pool house" on the property.  Id. at ¶ 16.  Brown's property is located "three houses away" from plaintiff's property.  Id.  Plaintiff alleges that Brown, Attorney Robinson, and the ARB violated her civil rights by stating that the 17 Adams Lane property was not located within the Rosko Place subdivision when seeking a permit for the construction on Brown's property.  Id.  Plaintiff alleges that this was done in order to "spare applicants for huge houses in the Rosko Place subdivision from having to litigate against [p]laintiff's Article 78."  Id. at ¶ 84.  Plaintiff does not state precisely when Brown's new home was built, but commenced an Article 78 proceeding against Brown and his wife to prevent the construction on March 24, 2008.  Konrad v. Southampton Vill. Bd. of Architect. Review & Historic Preservation, No. 08-13838, at 1 (N.Y. Sup. Ct., Suffolk Cnty., Sept. 8, 2009).[5]  At the time of Justice Mayer's decision dismissing plaintiff's Article 78 petition, the Brown home had not yet been built; consequently, it appears that construction on the Brown home was completed at some point after September of 2009.

With regard to the construction on homeowner defendant Guerin's home, plaintiff alleges that Guerin, like Brown, attempted to circumvent the covenants restricting construction in the

---

[4] See n. 2, supra.

[5] In deciding a motion to dismiss, the court may consider, without converting the motion to one for summary judgment, "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."  Weiss v. Incorporated Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (citation omitted); see also Eaves v. Designs for Finance, Inc., 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (same).  Rule 201 provides that a court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201.  Court records and other public records are facts of which a court may properly take judicial notice pursuant to Rule 201.  See, e.g. Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of court records in related case pursuant to FED. R. EVID. 201(b)).

Rosko Place subdivision by asserting, in his building application permit, that his property located at 7 South Rosko Drive, opposite plaintiff's property, was not part of the subdivision.  Complaint at ¶ 16.  Guerin sought and was granted approval from the ARB to remodel the existing 2,177 square foot, single story home on his property to include a second story and an additional 2,752 square feet of living space in January of 2010.  See id. at Exhibit 12 (January 25, 2010 decision of the ARB approving the Guerin application) at ¶¶ 4, 5.  In addition to alleging that Guerin's application to the ARB was "fraudulent," id. at ¶ 90, plaintiff further alleges that Guerin was involved in a physical altercation with plaintiff on June 5, 2010, id. at ¶ 19; see also id. at Exhibit 4 (police report describing the incident).  Plaintiff states that Guerin "cursed and physically attacked" her and hit her after she approached him to discuss their ongoing dispute.  Id.

     D)    <u>The Prior Litigations</u>

          Plaintiff has engaged in several Article 78 proceedings in New York State Courts in connection with the Village's application of the 2005 Zoning Ordinance.  Complaint at ¶¶ 67, 71, 85.[6]  In each of these actions, plaintiff's allegations appear to have been essentially the same – plaintiff challenged the use by the various named defendants of the 2005 Zoning Ordinance and related ARB procedures to permit the construction of new structures (including accessory buildings, additions to existing homes, and larger replacement homes) on properties that plaintiff perceives to be within the Rosko Place subdivision.  Id.

          Plaintiff filed her first Article 78 petition challenging the approval of new construction

---

[6] The Court takes judicial notice (see n.5, supra) of the fact that plaintiff has sued defendant Brown previously, not only in an Article 78 proceeding, but also for libel and slander. Konrad v. Brown, 91 A.D.3d 545, 546, 937 N.Y.S.2d 190, 191 (N.Y. Sup. Ct. App. Div. 1st Dep't 2012).

within the Rosko Place subdivision in 2007.  Id. at ¶ 67.[7]  In that case, <u>Konrad v. Southampton Vill. Bd. of Architect. Review & Historic Preservation</u>, Index No. 07-26161, Slip Op. (N.Y. Sup. Ct. Suffolk Cnty., Jan. 30, 2008), plaintiff challenged the construction by alleged speculative builders (homeowners Sandra Seroy and Frank Crivello) of a "huge house at 37 Leo's Lane."[8] Id.  Although the home had been approved for construction by the ARB, plaintiff sought State Court intervention to prevent the construction.  Id.  According to plaintiff, the action was dismissed for improper service.  Complaint at ¶ 68.  Plaintiff claims that she personally served the petition on the Village Clerk in a timely manner, but that Attorney Robinson "falsely claimed that the papers... had been lost," filed a motion to dismiss for improper service, and then failed to correct his motion even after locating the papers some five months after service had been completed.  Id.  Plaintiff implies that Attorney Robinson failed to correct his error regarding the service of the Article 78 petition with the State Court, and that this "fraud on the court" was the basis for the petition's dismissal.  Id.  However, correspondence by plaintiff's own attorney in that matter, submitted as an exhibit to the complaint, belies plaintiff's representation.  Compare id. at ¶ 68; id. at Exhibit 12.  From the correspondence of plaintiff's attorney to the State Court in this action (Index No. 07-26161), it is apparent that Attorney Robinson advised the Court that he had located plaintiff's petition in reply papers filed in connection with Attorney Robinson's motion to dismiss.  Id. at Exhibit 12 (Correspondence of F. Russell DuPuy, III, regarding Case

---

[7] While this appears to be plaintiff's first Article 78 petition in connection with her Southampton residence, the Court takes judicial notice (see n.5, supra) of the fact that Konrad is no stranger to the Article 78 process, having filed at least one petition against a cooperative building in Manhattan in 1996. See Konrad v. 136 East 64th St. Corp., 678 N.Y.S.2d 629, 630 (N.Y. App. Div. 1st Dep't 1998).

[8] Thirty seven Leo's Lane is the same property currently owned by the Quintins. Complaint at ¶ 20.  Seroy and Crivello were prior owners of the property.

No. 07-26161, dated February 15, 2008). While it is unclear whether Attorney Robinson used the proper procedure to advise the State Court of his apparent error, it is clear that the State Court was made aware of said error prior to reaching a decision on the motion to dismiss in this first Article 78 petition. Id.; see also Konrad, Index No. 07-26161, Slip Op. at 3. Furthermore, a review of the decision issued by the presiding Justice reveals that, while the petition was dismissed for improper service, it was dismissed for plaintiff's failure to properly serve the individual homeowner defendants named, not for failure to properly serve the named Village defendants. Consequently, it appears that Attorney Robinson's alleged misplacement of plaintiff's papers had no effect whatsoever on the outcome of the Article 78 petition bearing Index No. 07-26161. Konrad v. Southampton Vill. Bd. of Architect. Review & Historic Preservation, Index No. 07-26161, Slip Op. at 3-4 (N.Y. Sup. Ct. Suffolk Cnty., Jan. 30, 2008). Furthermore, the State Court opinion addressed not only plaintiff's procedural shortcomings, but also the substantive shortcomings within the petition, finding that "petitioner's vague and unsubstantiated allegations are insufficient to make a prima facie showing that the [ARB]'s approval of [the homeowners'] application was arbitrary, capricious, unsupported by substantial evidence or made in violation of lawful procedure." Id., Slip Op. at 4. There is no indication that an appeal was taken from this decision, nor does plaintiff claim otherwise.

Plaintiff filed a second Article 78 petition involving the 2005 Zoning Ordinance in 2007. See Konrad v. Southampton Vill. Bd. of Architectural Review & Historic Preservation, Index No. 07-35049, Slip Op. at 1 (N.Y. Sup. Ct. Suffolk Cnty., June 28, 2010). That petition named the ARB, the Southampton Village Building Department, and private citizen Christopher Tufo as defendants. In that petition, Konrad sought to challenge the approval granted by the ARB to Tufo for "the renovation, partial demolition, and addition" to Tufo's single-family home located

at 81 Leo's Lane in the Rosko Place subdivision.  Id., Slip Op. at 2.  The petition was dismissed

on June 28, 2010 following a review of plaintiff's claims by the presiding Justice on the merits.

Id.  In the decision dismissing plaintiff's petition, the State Court noted that "petitioner has failed

to submit any evidence demonstrating that the decision of the respondent Board was arbitrary,

illegal, without a rational basis, or constituted an abuse of discretion."  Id., Slip Op. at 4.

Although it appears that plaintiff initially sought to appeal the June 28, 2010 decision, her appeal

was ultimately withdrawn.  Konrad v. Southampton Vill. Bd. of Architect. Review & History

Preservation, No. 2010-09607, Index No. 07-35049, Slip Op. at 1 (N.Y. App. Div. 2d Dep't,

Mar. 2, 2012) ("ORDERED that the [appellant's] motion is granted and the appeal is deemed

withdrawn").

       Plaintiff commenced a third Article 78 action in 2008, against the ARB, the Southampton

Building Department, defendant Brown, and his wife Elichia Brown.  Konrad v. Southampton

Vill. Bd. Of Architect. Review & Historic Preservation, Index No. 08-13838, Slip Op. at 1 (N.Y.

Sup. Ct. Suffolk Cnty., May 8, 2009).  In that petition, plaintiff challenged the ARB's approval

of the renovation, partial demolition, and expansion of the Browns' home at 17 Adams Lane.

Id., Slip Op. at 1-2.  Konrad's petition was dismissed on substantive grounds on May 8, 2009.

Id.  In that action, Justice Mayer of the Suffolk County Supreme Court ruled that, while Konrad

and the other petitioner, Elaine Fox, had standing to challenge the ARB's approval of the

Browns' construction application, id., Slip Op. at 2, their "contention that the [ARB]'s

determination was rendered in violation of lawful procedure and petitioners' due process rights...

[we]re without merit," id., Slip Op. at 3.  Justice Mayer further found that plaintiff's allegations

that certain members of the ARB "engaged in a fraudulent, corrupt and illegal conspiracy for the

benefit of a number of unnamed speculators/builders [we]re wholly unsubstantiated [and]

without merit." Id., Slip Op. at 5. Again, there is no indication that an appeal was taken from this decision, nor does plaintiff claim otherwise.

Finally, in 2010, plaintiff commenced a suit against defendant Brown for libel and slander. Konrad v. Brown, 91 A.D.3d 545, 937 N.Y.S.2d 190 (N.Y. App. Div. 1st Dep't 2012). Her claims in that action arose out of a letter to the editor, written by Brown, in which plaintiff claimed that defendant Brown made defamatory statements about plaintiff. Id., 91 A.D.3d at 546. That suit was likewise dismissed on substantive grounds. Id. The Appellate Division affirmed the motion court's finding that Brown's statements "were either not susceptible to a defamatory meaning, true or substantially true or pure opinion," and further finding that plaintiff "failed to show [that Brown had acted with] malice" or that his "statements were actuated by ill will." Id.

E)    The Defendants' Alleged "Retaliation" Against Plaintiff

Plaintiff claims that the Village defendants, as well as defendants Brown and Guerin, engaged in a variety of retaliatory actions against her in response to her opposition – both in public fora and through the State Court – to construction within the Rosko Place subdivision. Complaint at ¶¶ 16-21. According to plaintiff, this retaliation included: (1) advising members of the community not to hire plaintiff as an attorney, causing her to lose potential clients, id. at ¶¶ 17, 190, 194; (2) the spreading of lies about plaintiff to the community by the Village defendants, which caused her emotional distress and allegedly impacted plaintiff's physical health, id. at ¶¶ 212, 214; (3) in the case of defendant Guerin, becoming involved in a physical altercation with plaintiff as described in Section I(C), supra; (4) the encouraging of "speculative builders to attack [p]laintiff in The Southampton Press" and other media by the

Village defendants in order to "attack [plaintiff's] character," id. at ¶ 18; and (5) in the case of the Village defendants, the implementation of further prohibitive procedures and the use of "fraud" to prevent the plaintiff from becoming aware of, and thus being able to protest, further applications for new construction by homeowners within the Rosko Place subdivision, id. at ¶ 16.


II.     Plaintiff's Claims

In her complaint, plaintiff has lodged a total of 17 claims against the defendants.  Of those, 12 claims are expressly predicated on alleged violations of federal law (specifically, 42 U.S.C. §§ 1981 and 1983 and plaintiff's constitutional right to due process), and the remaining claims are predicated on alleged violations of state law.

With regard to the Village defendants, plaintiff claims that Mayor Epley and Trustee Robinson violated her constitutional due process rights (Complaint at Counts I, II, III, IV, V, VI, VII) her rights pursuant to 42 U.S.C. § 1981 (id. at Counts I, II, III, IV, V, VI, IX, XIV) and also § 1983 (id. at Counts VI, VII, VIII).  Village defendant Attorney Robinson is also alleged to have violated plaintiff's due process rights (id. at Counts V, VIII), as well as her rights pursuant to § 1981 (id. at Counts V, VIII) and § 1983 (id. at Counts VIII, XIII). Plaintiff further alleges that all of the Village defendants violated state law prohibiting the intentional infliction of emotional distress (id. at Count X) and tortious interference with prospective contractual relations (id. at Counts XI, XII, XVI), and that Mayor Epley and Trustee Robinson "negligently fail[ed] to expose Elbert W. Robinson's Fraud on the ARB" (id. at Count XV).

With regard to the Quintins, they are mentioned by name only in Count IX, within which plaintiff alleges that her rights pursuant to 42 U.S.C. § 1981 were violated when the Quintins

were given permission by the ARB to enlarge a pool house on their property. Id. at ¶ 174-77.

Insofar as the source of the violation of plaintiff's rights appears to be the approval granted to the

Quintins by the ARB, it is unclear in what way, if any, the Quintins themselves are alleged to

have engaged in such a violation.  However, reading the complaint in the light most favorable to

plaintiff, she claims that the Quintins violated her "contractual rights" by virtue of having

renovated their property in such as way as to render it no longer consistent with the covenants

allegedly binding on the homeowners within the Rosko Place subdivision.  Id. at ¶¶ 5, 6, 14.

Throughout her complaint, plaintiff conflates her "contractual rights" with her "civil rights."

See, e.g. id. at ¶¶ 14, 15, 16.  It therefore appears, upon a generous reading of the complaint, that

plaintiff claims that the Quintins violated her civil rights by erecting a structure on their property

that was not in accordance with the original covenants that allegedly attach to the residential

properties within the Rosko Place subdivision.

       With regard to defendant Guerin, plaintiff alleges that he violated her civil rights and her

rights pursuant to 42 U.S.C. § 1983 during the alleged physical altercation that occurred in June

of 2010, see id. at Count XVII; see also Section I(C), supra.  Additionally, as in the case of the

Quintins, plaintiff claims that Guerin, by virtue of having expanded the size of his home within

the Rosko Place subdivision, violated plaintiff's civil and contractual rights.  See, e.g. Complaint

at ¶ 16.  Furthermore, plaintiff states that Guerin committed "fraud," insofar as he reportedly

represented to the ARB that his property was adjacent to, but not part of, the Rosko Place

subdivision when he sought approval to enlarge his home.  Id.

       With regard to defendant Brown, plaintiff again claims that Brown violated her civil and

contractual rights by expanding the size of his home with ARB approval.  Id. at ¶ 84.  She further

alleges that defendant Brown, like defendant Guerin, committed fraud by stating that his

property was adjacent to, but not part of, the Rosko Place subdivision when seeking a building permit from the ARB.  Id. at ¶ 16.

As remedy, plaintiff seeks an injunction requiring the larger homes and additional accessory buildings constructed by the homeowner defendants to be torn down and "reduced to their prior and legal mass, in conformity with the common plan and scheme of the Rosko Place subdivision," id. at 53, and further requests compensatory damages in an unspecified amount, punitive damages in an unspecified amount, expenses and reasonable attorney's fees, and such other and further relief as the Court deems proper, id. at 54.


DISCUSSION

III.   Defendants' Motion to Dismiss the Complaint

Presently before the Court are defendants' motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants Donald and Melinda Quintin share legal representation and make their motion jointly.  Defendants Mark Epley, Paul Robinson, and Elbert W. Robinson, Jr. likewise share representation, and also make a joint motion to dismiss the complaint.  Defendant Dennis Guerin, proceeding by counsel, has made his own separate motion for dismissal, as has defendant William Brown, who is proceeding pro se.  All four motions allege similar grounds for dismissal.


A)    Pleading Standards on a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v.

15

Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)).  "Facial plausibility" is

achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949

(citing Twombly, 550 U.S. at 556).

As a general rule, the court is required to accept as true all of the allegations contained in

the complaint,  See Iqbal, 129 S. Ct. at 1949; Kassner v. 2ⁿᵈ Ave. Delicatessen, Inc., 496 F.3d

229, 237 (2d Cir. 2007); however, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements... are not entitled to the assumption of truth."  Iqbal,

129 S. Ct. at 1949-50 (citation omitted); see also Twombly, 550 U.S. at 555.  Legal conclusions

put forth in a complaint "must be supported by factual allegations" which state a claim for relief.

Iqbal, 129 S. Ct. at 1950.  A complaint of bare assertions will not suffice absent "further factual

enhancement."  Id. at 1949 (quoting Twombly, 550 U.S. at 557).  Only a complaint that "states a

plausible claim for relief" will survive a motion to dismiss.  Iqbal, 129 S. Ct. at 1950.


B)      Plaintiff's Status as a Licensed Attorney Precludes Her From Being Afforded the
        Leniency Typically Granted *Pro Se* Litigants

In general, "[a] document filed pro se is to be liberally construed,... and a pro se

complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations,

quotations omitted).  However, where the pro se litigant is an attorney, "[s]he cannot claim the

special consideration which the courts customarily grant to pro se parties."  Harbulak v. County

of Suffolk, 654 F.2d 194, 198 (2d Cir. 1981).  An attorney proceeding pro se is "not accorded the

same degree of leniency" as a typical pro se litigant, Fenner v. City of N.Y., 392 Fed. App'x 892,

894 n. 1 (2d Cir. 2010), and "the court has a right to expect skillfully drawn pleadings" from

such an attorney, <u>DeFina v. Latimer</u>, 79 F.R.D. 5, 7 (E.D.N.Y. 1977).  <u>See also</u> <u>Larsen v. JBC</u>

<u>Legal Group, P.C.</u>, 533 F.Supp.2d 290, 295 n. 2 (E.D.N.Y. 2008) ("the rules afforded pro se

litigants are not relaxed when that litigant is also an attorney").

 Here, plaintiff is, by her own admission, an attorney licensed to practice in New York

State, and admitted to the bar of this very Court.  <u>See</u>, <u>e.g.</u> Affidavit of Evelyn Konrad in Support

of Motion for Leave to Amend Complaint Pursuant to FRCP [<u>sic</u>] 1 and Court Order of 7

December ("Konrad Aff. in Supp.") at 1 (wherein plaintiff identifies herself as "an attorney duly

licensed to practice before any court of the State of New York and in the Eastern and Southern

District of the U.S. District Court").  Consequently, plaintiff should not and will not be afforded

the leniency commonly shown to non-attorney <u>pro se</u> litigants in evaluating the sufficiency of

her pleadings.


IV. <u>Plaintiff's Claims are Barred by the Statute of Limitations</u>

 Although plaintiff has alleged some seventeen separate causes of action in the complaint,

it appears that all of plaintiff's claims rest, at heart, on the alleged illegality of the 2005 Zoning

Ordinance, insofar as the 2005 Zoning Ordinance is the legal vehicle through which the

homeowner defendants were able to obtain approval to expand the size of their homes, and to

add accessory buildings on their properties.  As such, plaintiff's claims are barred by the relevant

statutes of limitations.

 First, with regard to plaintiff's claims as to the alleged illegality of the 2005 Zoning

Ordinance, such claims should have been raised in a declaratory judgment proceeding in New

York State Court.  <u>See</u> <u>Walter v. Starbird-Veltidi</u>, 78 A.D.3d 820, 821, 911 N.Y.S.2d 120, 121

(N.Y. Sup. Ct. App. Div. 2d Dep't 2010).  As the statute of limitations on a declaratory judgment

action in New York State is six years, see N.Y. C.P.L.R. 213(1) (Consol. 2013), a declaratory

judgment action challenging the substance of the 2005 Zoning Ordinance would have had to

have been filed on or before November 10, 2011 in order to be timely.  Walter v. Starbird-

Veltidi, 78 A.D.3d 820, 821, 911 N.Y.S.2d 120, 121 (N.Y. Sup. Ct. App. Div. 2d Dep't 2010)

("[a] declaratory judgment action is governed by the six-year catch-all statute of limitations set

forth in CPLR 213(1)").  Moreover, to the extent that plaintiff seeks to challenge the processes

by which the 2005 Zoning Ordinance was enacted, New York law requires such claims to be

made in an Article 78 proceeding, for which the statute of limitations is four months.  See, e.g.

P&N Tiffany Props., Inc. v. Village of Tuckahoe, 33 A.D.3d 61, 65-66, 817 N.Y.S.2d 345, 348-

49 (N.Y. Sup. Ct. App. Div. 2d Dep't 2006) (holding that Article 78 was proper avenue to

challenge procedures underlying enactment of legislation by village, and that four-month statute

of limitations applied); see also N.Y. C.P.L.R. §  217 (Consol. 2013) (setting forth four-month

statute of limitations).  The statute of limitations for plaintiff's procedural challenges to the 2005

Zoning Ordinance expired on March 10, 2006.  With regard to plaintiff's claims pursuant to 42

U.S.C. § 1983 based on alleged improprieties in the passage of the 2005 Zoning Ordinance, such

claims carry a statute of limitations of three years, and therefore would have to have been filed

by November 10, 2008 to be timely.  City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 123

n. 5 (2005) ("The statute of limitations for a § 1983 claim is generally the applicable state-law

period for personal-injury torts"); N.Y. C.P.L.R. § 214(5) (Consol. 2013) (setting three-year

statute of limitations for personal-injury actions in New York).  With regard to plaintiff's 42

U.S.C. § 1981 claims made in connection with the passage of the 2005 Zoning Ordinance, such

claims are governed by a four-year statute of limitations, and were thus time-barred as of

18

November 10, 2009.  Lawson v. Rochester City School Dist., 446 Fed. App'x 327, 328 (2d Cir. 2011) ("the statute of limitations for a § 1981 claim is four years") (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004)).

Plaintiff filed her complaint until August 13, 2012.  Complaint at 1.  Plaintiff offers a litany of reasons for her tardy filing.  See Plaintiff's Memorandum of Law in Support of Plaintiff's Answer to Motion to Dismiss By Defendants Epley et al. ("Pltff Opp to Village Mtn") at ¶¶ 17-20 (stating that the 2005 Zoning Ordinance was voted on "in secret," and claiming that plaintiff only acquired "proof of the illegally voted and illegally applied Zoning Ordinance" when she "acquired the gift of a current trustee's file late in 2009").  However, none of the reasons provided are sufficient to justify the tolling of the applicable statutes of limitations.  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (noting that New York State tolling rules are to be applied in § 1983 actions); N.Y. C.P.L.R. §§ 207-208 (Consol. 2013) (only available bases for tolling statutes of limitations in New York State proceedings are "infancy or insanity" or absence from the state).  Moreover, contrary to plaintiff's assertions in response to the Village defendants' motion to dismiss, Pltff Opp to Village Mtn at ¶¶ 17-20, plaintiff's complaint makes clear that plaintiff was not only aware of the Zoning Ordinance from the time of its passage, but was in fact a vocal opponent of it prior to its passage.  See, e.g. Complaint at ¶ 51.  Furthermore, having protested construction within the Rosko Place subdivision undertaken under the auspices of this Ordinance since at least 2007, id. at ¶ 63, plaintiff's attempt to now claim that she lacked the requisite knowledge to challenge the Ordinance in court until 2009, Pltff Opp to Village Mtn at ¶¶ 17-20, is disingenuous at best.[9]

_____

[9] Insofar as plaintiff's statements in opposition to the Village defendants' motion to dismiss are contradicted by her statements within the complaint, the Court may "properly

The Court finds that the statute of limitations bars all of plaintiff's claims sounding in federal law.  Plaintiff's due process, equal protection, and §§ 1981 and 1983 claims must fail because all of the defendants' actions with which plaintiff now takes issue – the construction on her neighbors' properties, the procedures followed at various community meetings about that construction – were taken in accordance with the 2005 Zoning Ordinance.  Since the time for plaintiff to challenge the validity of the 2005 Zoning Ordinance has, by any possible measure, long since elapsed, I recommend that plaintiff's claims sounding in federal law be dismissed with prejudice as barred by the statute of limitations.

V.      Even if Plaintiff's Claims Were Not Barred by the Statute of Limitations, Plaintiff's Claims are Barred by Collateral Estoppel

Under the law of New York State, a party should be collaterally estopped from litigating a particular issue or claim whenever "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007).  The party who is to be estopped need not have litigated against the same parties in the prior action, so long as the party being estopped had a "full and fair opportunit[y] to litigate its grievances" in the prior matter.  Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of New York, 496 Fed. App'x 122, 123 (2d Cir. 2012); see also Hyman, 502 F.3d at 65.  Thus, whenever a party has had an opportunity to be heard on a particular issue, and that issue has been ruled upon by a court of competent jurisdiction, that party should be

disregard[]" any statements by plaintiff that "seek[] to controvert [her] own pleading." Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985).

20

precluded from re-litigating the same issue in a later proceeding, regardless of whether the litigants in the two actions are identical.  Id.

As described in Section I(D), supra, plaintiff has engaged in no less than four separate proceedings in State Court arising out of her dispute with the Village and various homeowners within the Rosko Place subdivision over the size of the homes that have been permitted to be built within the subdivision since 2005.  Although the presently-named defendants (with the exceptions of homeowner defendant Brown and Village Attorney Robinson) were not named in any of plaintiff's prior suits, plaintiff may nevertheless be precluded from litigating against them if the substance of her claims in the instant matter is identical to that of the previously-litigated claims.  Hyman, 502 F.3d at 65.  Although plaintiff maintains that no court has ever issued a substantive ruling on the claims now before this Court, Pltff Opp to Village Mtn at ¶ 25, a review of the decisions dismissing her various Article 78 petitions reveals otherwise.

First, with regard to plaintiff's due process claims, such claims were considered and dismissed by Suffolk County Supreme Court Justice Peter H. Mayer on May 8, 2009.  Konrad v. Southampton Vill. Bd. of Architect. Review & Historic Preservation, Index No. 08-13838, Slip Op. at 3 (N.Y. Sup. Ct. Suffolk Cnty., May 8, 2009).  In the Article 78 proceeding before Justice Mayer, plaintiff and other petitioners specifically alleged that the Village ARB enacted a resolution "without adequate public notice thereby constituting a violation of lawful procedure and petitioners' due process rights."  Id., Slip Op. at 2.  Justice Mayer discussed, in detail, plaintiff's allegations that the Village ARB failed to perform its duties to maintain certain building standards within the Village, and otherwise failed to adhere to necessary procedures, thereby violating plaintiff's due process rights.  Id., Slip Op. at 4.  Upon due consideration, Justice Mayer found that plaintiff's contention that the ARB's decision "was rendered in

21

violation of lawful procedure and petitioners' due process rights" was "without merit." Id., Slip

Op. at 3.

Plaintiff's equal protection claims were likewise considered in a prior litigation. Suffolk

County Supreme Court Justice Denise F. Molia heard and dismissed plaintiff's equal protection

claims in Konrad v. Southampton Vill. Bd. Of Architect. Review & Historic Preservation, Index

No. 07-35049. Justice Molia held that "[w]hile the petitioner alleges that the respondent

[ARB]'s requirements for public notification of the date, time and place of public hearings runs

afoul of... the Equal Protection Clause of the United State Constitution... the petitioner has failed

to provide evidence or case law to support such claim." Id., Slip Op. at 3 (N.Y. Sup. Ct. Suffolk

Cnty. June 28, 2010). The Court further found that plaintiff "failed to set forth a sufficient basis

upon which to annul the decision of the respondent [ARB] and the related actions of other

municipal departments or divisions." Id., Slip Op. at 4.

Plaintiff has also repeatedly sought to challenge the construction of homes larger than

those contemplated by the original developer within the Rosko Place subdivision in the past.

These claims, like her due process and equal protection claims, have already been ruled upon by

the State Court. While these particular homeowner defendants (other than defendant Brown)

were not the subject of plaintiff's previous litigations, the Article 78 petitions involved

homeowners who were identically situated to the present defendants. Thus, while plaintiff has

not yet litigated against some of the present defendants, plaintiff has nevertheless had the

opportunity to litigate – repeatedly – the issue of whether or not homes larger than the size

contemplated by the original developer could be built within the Rosko Place subdivision. In

response to plaintiff's allegations, the State Court has found: (1) that "[Konrad]'s vague and

unsubstantiated allegations are insufficient to make a prima facie showing that the Board's

approval of respondents' application [to enlarge their home, located within the Rosko Place subdivision] was arbitrary, capricious, unsupported by substantial evidence or made in violation of lawful procedure," Konrad, Index No. 07-26161, Slip Op. at 4; (2) that "the petitioner has failed to submit any evidence demonstrating that the decision of the respondent [ARB] was arbitrary, illegal, without a rational basis, or constituted an abuse of discretion," Konrad, Index No. 07-35049, Slip Op. at 4; and (3) that Konrad's petition should be dismissed because the Village ARB's approval of a building permit application was "supported by the evidence on the records and ha[d] a rational basis in law," Konrad, Index No. 08-13838, Slip Op. at 5.  In each of these actions, the State Court essentially found that plaintiff lacked a legitimate basis upon which to prevent the Village from permitting the named defendant homeowners from engaging in construction that was purportedly in violation of the covenants alleged to govern land use within the Rosko Place subdivision.

Finally, to the extent that plaintiff has raised allegations of "fraud" against defendant Brown arising out of a letter to the editor the he wrote and published in 2009, such claims are precluded by Konrad v. Brown, 91 A.D.3d 545, 937 N.Y.S.2d 190 (N.Y. App. Div. 1ˢᵗ Dep't 2012).  In that action, the Court considered whether Brown had defamed plaintiff, and determined that Brown's statements "were either not susceptible to a defamatory meaning, true or substantially true or pure opinion." Id., 91 A.D.3d at 546, 937 N.Y.S.2d at 191.  Plaintiff has therefore already been heard regarding the alleged falsity of Brown's statements in that particular publication.

Based on the various decisions of the State Court issued in the four cases filed by plaintiff over the past six years, I find that plaintiff has had more than ample opportunity to be heard previously on the claims raised in the instant litigation.  I therefore recommend that

plaintiff's due process, equal protection, civil rights, and contractual rights claims (to the extent that they are not barred by the statute of limitations) be dismissed on the grounds of collateral estoppel.

VI.     <u>If Any of Plaintiff's Federal Claims Survive the Statute of Limitations and Are Not Subject to Collateral Estoppel, Such Claims Should Nevertheless Be Dismissed</u>

    A)     <u>Plaintiff Has Abandoned Her Claims Made Pursuant to 42 U.S.C. § 1981</u>

        To the extent that plaintiff's original complaint contains claims made pursuant to 42 U.S.C. §1981, the Court now regards such claims as having been withdrawn, insofar as plaintiff has stated that "Plaintiff Makes No Claims Under 42 U.S.C. § 1981" in her opposition to the Village defendants' motion to dismiss.  Pltff Opp to Village Mtn at ¶ 15.  However, the Court notes that, even if plaintiff had not voluntarily withdrawn her claims made pursuant to § 1981, such claims should be dismissed with prejudice.

        Section 1981 requires any plaintiff seeking redress pursuant to this statute to "allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities."  <u>Brown v. City of Oneonta</u>, 221 F.3d 229, 239 (2d Cir. 1999); <u>see</u> <u>also</u> <u>Young v. Lord & Taylor, LLC</u>, No. 12 Civ. 2108, 2013 U.S. Dist. LEXIS 39586, at *14 (E.D.N.Y. Mar. 21, 2013) (same).  Plaintiff has nowhere alleged – and, as a Caucasian woman, <u>see</u>, <u>e.g.</u> Complaint at Exhibit 4 (police report within which plaintiff's race is identified as "white"), cannot allege – that she is a member of a minority group for which § 1981's protections are intended.  Thus, any claim made by plaintiff pursuant to § 1981 must fail as a matter of law.  As such, I recommend that plaintiff's claims made pursuant to 42 U.S.C. § 1981 be dismissed with prejudice.

24

B)     Plaintiff's Claims Pursuant to 42 U.S.C. § 1983 Against the Homeowner
       Defendants Should Be Dismissed Because the Defendants Are Not State Actors

"In order to state a claim under § 1983, a plaintiff must allege (1) that the conduct

complained of was committed by a person acting under color of state law, and (2) that such

conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or

laws of the United States."  Dwyer v. Regan, 777 F.2d 825, 828 (2d Cir. 1985). The homeowner

defendants, as private parties, may only be subject to liability for these claims if plaintiff is able

to show that defendants were acting "under color of any statute, ordinance, regulation, custom,

or usage of any State or Territory."  42 U.S.C. § 1983 (2012); see also Flagg Bros., Inc. v.

Brooks, 439 U.S. 149, 155-56, 98 S. Ct. 1729 (1978).  "The traditional definition of acting under

color of state law requires that the defendant in a § 1983 action have exercised power 'possessed

by virtue of state law and made possible only because the wrongdoer is clothed with the

authority of state law.'"  West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250 (1988) (quoting United

States v. Classic, 313 U.S. 299, 326 (1941)).

> State action may properly be found where the state exercises coercive
> power over, is entwined in [the] management or control of, or
> provides significant encouragement, either overt or covert, to, a
> private actor, or where the private actor operates as a willful
> participant in joint activity with the State or its agents, is controlled
> by an agency of the State, has been delegated a public function by the
> state, or is entwined with governmental policies.

Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308, 313 (2d Cir. 2003), cert. denied, 539 U.S.

942 (2003) (internal quotations omitted) (alteration in original).  Allegations that are merely

conclusory will be insufficient to support a claim that private individuals have acted "under color

of state law."  See, e.g. White v. Monarch Pharmaceuticals, Inc., 346 Fed. App'x 739, 741 (2d

Cir. 2009) (holding that plaintiff failed to state a claim pursuant to § 1983 where "her allegations

of a nexus between the private defendant and the State [we]re vague and conclusory, and fail[ed]

25

to demonstrate that the actions of the defendants should be treated as state action"); see also Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity").

Plaintiff's allegations of a "nexus" between the actions of the municipality and the homeowner defendants are, at best, conjecture.  Plaintiff has provided no facts or evidence to support the conclusion that the homeowner defendants and the Village were in any way "willful participant[s] in joint activity," nor has she shown that the homeowner defendants were "delegated a public function" by the Village.  Tancredi, 316 F.3d at 313.  While plaintiff has asserted that the Village defendants and the homeowner defendants were engaged in some sort of scheme to build "McMansions" in the Rosko Place subdivision in order to financially benefit the Village defendants and others within the Village administration, Complaint at ¶ 57, she has provided no facts or evidence in support of this alleged scheme.  The facts, as pled in the complaint, reveal only that the homeowner defendants sought and were granted building permits from the Village ARB in accordance with the 2005 Zoning Ordinance and other applicable Village laws, and that the homeowner defendants subsequently engaged in and completed the approved construction.

Consequently, I find that the homeowner defendants are not "state actors" within the meaning of § 1983.  I therefore recommend that plaintiff's § 1983 claims against the homeowner defendants be dismissed with prejudice, not only because these claims are barred by the statute of limitations and are precluded by plaintiff's prior litigations, but also because plaintiff has failed to meet the requisite pleading standards under § 1983.

C)   <u>Plaintiff's § 1983 Claims Against the Village Defendants, and Her Due Process
Claims Against All Defendants, Should Be Dismissed Because Plaintiff Has
Failed to Identify a Constitutionally Cognizable Right of Which She Was
Deprived</u>

"It is axiomatic that a successful § 1983 claim requires more than a showing that
one has been wronged at the hands of a state or municipal official.  Rather, a plaintiff must allege
that he has been deprived of some right secured by federal statute or the United States
Constitution."  <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 249 (2d Cir. 1985).

Plaintiff alleges that the source of the various rights of which she claims defendants have
deprived her is "the common plan and scheme" and "covenants which run with the land" within
the Rosko Place subdivision.  Complaint at ¶¶ 4, 5.  From this common plan and scheme, and
from these covenants, plaintiff has concluded that she has contractual, civil, and constitutional
rights that would require the Village to deny building permits to homeowners within the
subdivision seeking to enlarge their existing homes regardless of prevailing zoning laws within
the Village, and that would require plaintiff's neighbors not to engage in such construction
regardless of whether they are granted permits by the Village to do so.  <u>See</u>, <u>e.g.</u> <u>id.</u> at ¶¶ 5-14.
These allegations also form the basis of her due process claims against all defendants.  A review
of prevailing law within this Circuit, however, contradicts plaintiff's assertion that her "rights"
are sufficient to support either a § 1983 or a due process claim against any of the defendants.[10]

The "right to prohibit a nearby landowner from building on his land... [does not] exist[]
under the Constitution."  <u>Puckett v. City of Glen Cove</u>, 631 F.Supp.2d 226, 238 (E.D.N.Y.

---

[10]  When considering a motion to dismiss, the Court will accept plaintiff's factual
allegations as true, but need not accept the plaintiff's conclusions of law based on those facts as
true.  <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 771 (2d Cir. 1994)
("conclusions of law or unwarranted deductions of fact are not admitted" on a motion to dismiss)
(internal quotations, citations omitted); <u>see</u> <u>also</u> <u>Lentell v. Merrill Lynch & Co., Inc.</u>, 396 F.3d
161, 175 (2d Cir. 2005) (same).

2009).  Where a plaintiff's sole theory in support of a due process challenge or a claim pursuant to 42 U.S.C. § 1983 is that "they have a constitutionally protected interest in <u>preventing</u> municipal authorities from granting another property owner a certain use of his property under the land use regulations," plaintiff's claims will be dismissed as a matter of law.  <u>Schubert v. City of Rye</u>, 775 F.Supp.2d 689, 707 (S.D.N.Y. 2011) (emphasis in original).  Indeed, the Second Circuit has held that plaintiffs have "no right to demand that [municipal officials] enforce" land use restrictions against plaintiff's neighbors, even where the neighbors' properties are not in compliance with prevailing zoning laws or other land use regulations.  <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 192 (2d Cir. 1994) (citing <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 195 (1988)).[11]

Consequently, even if plaintiff's 42 U.S.C. § 1983 claim against the Village defendants and her due process claims against all of the defendants were not barred by the statute of limitations, and were not precluded by virtue of plaintiff's prior State Court litigations, such claims would necessarily fail.  Plaintiff's § 1983 and due process claims are based on the theory that plaintiff has a federally- or constitutionally-recognized right to prohibit another from building on his own land, but no such right exists.  Thus, even if plaintiff's § 1983 and due process claims were not otherwise barred, I would nevertheless recommend that said claims be

---

[11] Plaintiff's reliance on cases such as <u>Ceja v. Vacca</u>, 503 Fed. App'x 20, 21 (2d Cir. 2012), and <u>RRI Realty Corp. v. Incorporated Vill. of Southampton</u>, 870 F.2d 911, 912 (2d Cir. 1989), to establish her right to demand that the homeowner defendants be ordered to reduce the size of their homes is misplaced.  Both <u>Ceja</u> and <u>RRI Realty Corp.</u> held that plaintiff landowners lacked standing to challenge decisions by local municipalities to revoke certificates of occupancy or building permits that were previously promised to the plaintiff landowners, even after construction had been completed on the subject property.  <u>See Ceja</u>, 503 Fed. App'x at 21; <u>RRI Realty Corp.</u>, 870 F.2d at 912.  These cases stand for the principle that landowners lack sufficient property rights in permits or certificates of occupancy to challenge a municipality's revocation of same on due process grounds, <u>id.</u>; they certainly do not imbue private citizens with the right to demand that a neighbor's home, built in accordance with the established law of, and with the approval of, the local municipality, be torn down.

dismissed for failure to state a claim upon which relief can be granted.

VII.     Supplemental Jurisdiction Over The State Law Claims Should be Declined

It is "well within [the] discretion [of a district court] to decline supplemental jurisdiction [over state law claims] when all claims over which the district court had original jurisdiction have been properly dismissed." Choe v. Fordham University School of Law, 81 F.3d 319, 319 (2d Cir. 1996); see also Kia P., 235 F.3d at 296 (declining to exercise supplemental jurisdiction over plaintiff's state law claims where plaintiff's Section 1983 claims – the sole basis for federal jurisdiction – had been dismissed). This case remains at its outset. No discovery has occurred due to the stay pending the outcome of the instant motion. I therefore recommend that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims, and recommend that plaintiff's state law claims be dismissed without prejudice.

VIII.    Leave to Amend[12]

The amendment of pleadings is governed by Federal Rule of Civil Procedure 15(a), which provides that "a party may amend the party's pleading only by leave of court or by written consent of the other party; and leave shall be given as justice so requires." Fed. R. Civ. P. 15(a). The decision to allow such leave is firmly within the discretion of the district court. See Liberty Mut. Ins. Co. v. First Brighton Transp. Mgmt., No. 07 CV 715, 2008 U.S. Dist. LEXIS 31791, at *11-12 (E.D.N.Y. Apr. 16, 2008) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)). Leave to amend is generally granted unless permitting the proposed

---

[12] The Court declines to afford plaintiff the more lenient standard generally afforded pro se plaintiffs seeking leave to amend, because plaintiff, as a licensed attorney admitted to practice before this Court, is not entitled to such leniency. See Section III(B), supra.

29

amendment would be futile, or there appears to be bad faith or unnecessary delay on the part of

the movant.  See Foman v. Davis, 371 U.S. 178, 182 (1962).

The court applies the same standard as that for a motion to dismiss under Rule 12(b)(6)

when deciding whether to grant leave to amend.  See Dougherty v. Town of N. Hempstead Bd.

of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).  A party's claim will survive a motion to

dismiss so long as the party pleads enough facts to "state a claim to relief that is plausible on its

face."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  As such, "[t]he court must construe the facts alleged by

the party proposing the amendment to be true and view them in the most favorable light."

Hartman v. County of Nassau, No. 04 CV 1784, 2008 U.S. Dist. LEXIS 34729, at *55 (E.D.N.Y.

Apr. 28, 2008) (citing Narvarte v. Chase Manhattan Bank, N.A., No. 96 CV 8133, 1998 U.S.

Dist. LEXIS 15530, at *1 (S.D.N.Y. Oct. 1, 1998)).

Upon review of plaintiff's proposed amended complaint, it appears that the majority of

the proposed amendments involve the addition of further detail regarding the claims first made in

the original complaint.  See, e.g. Proposed Amended Complaint ("Prop. Am. Complaint") at ¶¶

50, (providing further detail regarding nature of alleged due process and equal protection rights

violations), 60 (providing further detail regarding the restrictive covenants that allegedly attach

to homes located within the Rosko Place subdivision), 61-66 (providing facts intended to

establish that Village defendants are policymakers, rather than employees of the Village), 85-86

(providing additional details about the alleged "fraud" committed by Guerin, Brown, and the

Village defendants), 162 (providing further detail regarding nature of alleged due process and

equal protection rights violations).  None of this additional information cures the fundamental

flaws that rendered plaintiff's original complaint unviable. Plaintiff's claims remained barred by

the statute of limitations and collateral estoppel, as described herein.  Furthermore, none of the

additional detail provided alters the fact that plaintiff, on the facts here, has no legally cognizable

constitutional right to prevent her neighbors from building on their own property, particularly

where, as here, they have done so with approval of the necessary municipal authorities.  See, e.g.

Puckett, 631 F.Supp.2d at 238-39.


A)      Plaintiff's Proposed First Amendment Retaliation Claim is Not Sufficiently Pled

The only new substantive federal claim[13] that plaintiff has made in her proposed

amended complaint is a claim that the defendants infringed upon her First Amendment rights by

retaliating against her for speaking out against construction in the Rosko Place subdivision.

Proposed Amended Complaint ("Prop. Am. Complaint") at ¶¶ 4-6, 167-69.

In order to state a successful First Amendment retaliation claim, plaintiff must

demonstrate: "(1) [she] engaged in speech protected by the First Amendment; (2) persons acting

under color of state law took adverse action against [her] in retaliation for that speech; and (3)

the retaliation resulted in actual chilling of [her] exercise of [her] constitutional right to free

speech."  MacPherson v. Town of Southampton, No. 08 Civ. 4113, 2013 U.S. Dist. LEXIS

62356, at *12 (E.D.N.Y. May 1, 2013) (internal quotations omitted).  Although plaintiff's

proposed amended complaint adequately demonstrates that she exercised her First Amendment

---

[13] The Court notes that, in addition to adding a new substantive claim to her proposed amended complaint, plaintiff also adds defendant Brown's wife, Elichia Brown, as a defendant. However, plaintiff's claims against Elichia Brown are identical to those previously made against William Brown, and thus should be dismissed as a matter of law for all of the reasons set forth herein.  Furthermore, as the Browns are no longer the owners of 17 Adams Lane, see n.2, supra, plaintiff's claims should also be dismissed for lack of subject matter jurisdiction, because the Browns cannot provide plaintiff with the remedy sought.  Fox v. Board of Trustees of the State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) ("A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'") (quoting County of Los Angeles v. Davis, 44 U.S. 625, 631 (1979)).

rights in connection with her opposition to building within the Rosko Place subdivision, she has

not demonstrated that her speech was "actual[ly] chill[ed]" by virtue of any retaliatory action

taken against her.  Id.

      In order to establish retaliation for purposes of a First Amendment retaliation claim, "[i]t

is sufficient to allege facts from which a retaliatory intent on the part of defendants reasonably

may be inferred."  Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91

(2d Cir. 2002).  "[A] bald and uncorroborated allegation of retaliation... [is] inadequate to

withstand a motion to dismiss."  Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir.

1994).  Here, plaintiff's evidence of retaliation includes allegations that: (1) the Village ARB

decided in 2007 to require homeowners expanding the size of their home at 37 Leo's Lane[14] to

build the house 29 feet closer to plaintiff's property line following plaintiff's protest against the

home's expansion, Prop. Am. Complaint at ¶ 57; (2) the Quintins put up a stockade fence that

interfered with plaintiff's "quiet enjoyment of her house and property" by "keeping... the

morning sun away" from her privet hedges, which "was her only defense of privacy," id. at ¶¶

103-104; (3) the Village defendants have "chilled [p]laintiff's use of her First Amendment rights,

keeping her from continuing to express her opinion against the newest applications for huge

houses in her neighborhood," id. at ¶ 169; and (4) the Village defendants "conduct in effect

paralyzed [plaintiff] and chilled her previously vigorous use of her First Amendment rights, in

public and in court," id.

      The only factual allegation that arguably could give rise to a First Amendment retaliation

---

[14] The homeowners referred to here appear to be prior owners of 37 Leo's Lane, rather
than the current owners, the Quintins.  Prop. Am. Complaint at ¶ 57.

claim is the first, regarding the change to the building plans at 37 Leo's Lane.[15]  This activity

was alleged to have occurred in 2007.  Id. at ¶ 57.  Plaintiff engaged in three separate Article 78

petitions against the Village and various homeowners within the Rosko Place subdivision

between 2007 and the present, see Section I(D), supra, and also "continued the public resistance"

to building in the Rosko Place subdivision after the change to the building plans at 37 Leo's

Lane was made by speaking out at ARB meetings and writing letters to a local newspaper

"pointing out... the lawlessness of the Epley administration," Prop. Am. Complaint at ¶¶ 58-59.

Thus, by her own admission, plaintiff continued to exercise her free speech rights – speaking out

in public, publishing letters to the editor of a local newspaper, and commencing lawsuits – after

the allegedly retaliatory action had already been taken against her.  Where a plaintiff continues to

exercise his or her First Amendment rights after the alleged retaliation, plaintiff's First

Amendment retaliation claim "fails as a matter of law."  Williams v. Town of Greenburgh, 535

F.3d 71, 78 (2d Cir. 2008) (dismissing plaintiff's First Amendment retaliation claim where it was

"abundantly clear from the record" that plaintiff continued to exercise his speech rights

following the alleged retaliation).

Plaintiff has failed to show that any of the defendants, acting under color of state law,

took any action against her that resulted in her speech being "silenced or chilled."  Id.

Consequently, plaintiff has failed to plead enough facts to "state a claim to relief that is plausible

on its face," Ashcroft, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570), and her motion to

amend the complaint in order to add a First Amendment retaliation claim should therefore be

---

[15] Plaintiff's claim regarding the alleged retaliation by the Quintins fails because plaintiff
has failed to establish that the Quintins acted under color of state law.  See Section VI(B), supra.
The additional claims that her speech was "chilled" fail to meet the second prong of plaintiff's
burden on her retaliation claim because they constitute "bald and uncorroborated allegation[s] of
retaliation," which are insufficient to survive a motion to dismiss.  Gagliardi, 18 F.3d at 195.

denied, <u>Foman</u>, 371 U.S. at 182.

      B)    <u>To the Extent that Plaintiff Has Alleged New State Law Claims, the Court Should Decline Supplemental Jurisdiction Over These Claims</u>

To the extent that plaintiff has raised new state law claims in the proposed amended complaint, the Court should decline supplemental jurisdiction over any state law claims raised for the first time in the proposed amended complaint, for the reasons set forth in Section VII, <u>supra</u>.

Given that plaintiff has failed to make a <u>prima</u> <u>facie</u> case in support of her proposed First Amendment retaliation claim, and her proposed amendments fail to cure the pleading deficiencies identified in the federal claims that have carried over from her original complaint, I recommend that plaintiff's motion for leave to amend the complaint be denied, as amendment would be futile.

IX.    <u>The Motions for Sanctions</u>

Plaintiff has filed a request seeking sanctions against <u>pro</u> <u>se</u> defendant William Brown because she believes that "Mr. Brown's letters to the Court and his pleadings have been ghost-written by defendant Elbert W. Robinson, Jr., in violation of Federal Rules of Civil Procedure 11(a)." <u>See</u> Correspondence of Evelyn Konrad, dated June 26, 2013 ("June 26 Letter"), at 1 [Docket Entry No. 96]. Plaintiff has also filed a letter with the Court, dated July 10, 2013, in which plaintiff claims that she is "not moving for sanctions, because [she] cannot see any way that the damage done to her case... can be undone." <u>See</u> Correspondence of Evelyn Konrad, dated July 10, 2013 ("July 10 Letter"), at 1 [Docket Entry No. 107]. Although plaintiff states in her July 10 Letter that she is not seeking sanctions, the remainder of the letter includes various

allegations of alleged wrongdoing by counsel for the Village defendants, the Quintins, and Guerin, and further requests that the Court "decide what will be just and will undo the damage done." Id. As such, the Court will construe the July 10 Letter as a request for sanctions against Declan R. Redfern, counsel for Guerin; David Arntsen, counsel for the Village defendants; and Daniel C. Malone, counsel for the Quintins. With regard to Mr. Redfern, plaintiff alleges that he "failed to live up to the stipulation that he signed," although she does not state in what way he failed to do so. Id. With regard to Mr. Arntsen, plaintiff appears to allege that his motion papers, at lengths of 17 and 15 pages, were over-long and not in compliance with the Court's page limitations. Id. With regard to Mr. Malone, plaintiff alleges that his motion papers were also over-long, and also that he sent exhibits to the Court that were not provided to plaintiff on June 7, 2013. Id. at 2. Finally, with regard to Mssrs. Arntsen and Malone, plaintiff alleges that they engaged in "bad-faith relabeling" of documents submitted on the instant motions. Id. It is unclear, on both requests for sanctions, what form of relief plaintiff is actually seeking. Id.; see also June 26 Letter.

In response to plaintiff's applications for sanctions, the Village defendants oppose both of plaintiff's request for sanctions, see Correspondence of David Arntsen, dated June 26, 2013 [Docket Entry No. 97] and Correspondence of David Arntsen, dated July 11, 2013 [Docket Entry No. 111]. Additionally, in response to the June 26 Letter, defendant Elbert W. Robinson, Jr. also makes a cross-motion for sanctions against plaintiff pursuant to 28 U.S.C. § 1927, which permits the recovery of excess costs, expenses, and attorney's fees reasonably incurred where an attorney (such as plaintiff) "multiplies the proceedings in any case unreasonably and vexatiously," id. See Correspondence of David Arntsen, dated June 26, 2013, at 2 [Docket Entry No. 97]. Pro se defendant William Brown also opposes plaintiff's sanctions request against him (see June 26

Letter), and likewise makes a cross-motion for sanctions against plaintiff.  Correspondence of

William Brown, dated June 27, 2013 [Docket Entry No. 100].  The Quintins also oppose

plaintiff's request for sanctions against their counsel as set forth in the July 10 Letter, but do not

cross-move for sanctions.  See Correspondence of Daniel C. Malone, dated July 10, 2013

[Docket Entry No. 109].  Guerin has remained silent with regard to plaintiff's motion for

sanctions against Guerin's counsel.

        I recommend that all motions for sanctions be denied in their entirety on the ground that

the movants have set forth inadequate facts and law to support a request for the relief requested.


X.      Plaintiff Should be Warned Against Filing Further Related Actions

        "The district courts have the power and the obligation to protect the public from

individuals who have a history of litigation entailing vexation, harassment, and needless expense

to [other parties] and an unnecessary burden on the courts and their supporting personnel."

Kennedy v. England, No. 13 Civ. 988, 2013 U.S. Dist. LEXIS 31497, at *4 (E.D.N.Y. Mar. 5,

2013) (quoting Lau v. Meddaugh, 229 F.3d 121, 122 (2d Cir. 2000) (alteration in original)).  In

order to meet this obligation, a district court has the inherent right to issue an injunction

preventing a plaintiff from filing any further related actions in federal courts whenever "a

plaintiff 'abuses the process of the Courts to harass and annoy others with meritless, frivolous,

vexatious, or repetitive... proceedings.'" Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000)

(quoting In re Hartford Textile Corp., 659 F.2d 299, 305 (2d Cir. 1981) (per curiam)) (alteration

in original); see also Malley v. New York City Bd. of Educ., 112 F.3d 69, 69 (2d Cir. 1997) (per

curiam) (filing injunction is appropriate where plaintiff has filed numerous complaints based on

the same events).  Although a filing injunction may be appropriate where a plaintiff has "a

penchant for filing frivolous or vexatious claims," <u>Moates v. Barkley</u>, 147 F.3d 207, 209 (2d Cir. 1998) (per curiam), "[t]he unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant <u>sua</u> <u>sponte</u> without providing the litigant with notice and an opportunity to be heard," <u>id.</u>, 147 F.3d at 208.

Plaintiff herein is currently on her fifth action related to the construction of larger homes within the Rosko Place subdivision, having brought three prior Article 78 proceedings and a defamation case before the New York State Supreme Court.  She has sued some configuration of Village officials and agencies in four of the five related actions, has sued defendant Brown in three of the five actions, and has commenced two actions relating to construction at 37 Leo's Lane, the residence currently owned by the Quintins and previously owned by Sandra Seroy and Frank Crivello, who were the subjects of an earlier Article 78 proceeding.  In the present action, plaintiff has attempted to seek relief which plaintiff – as a licensed attorney – should know that this Court has no jurisdiction to grant.  <u>See</u>, <u>e.g.</u> Correspondence of Evelyn Konrad, submitted May 10, 2013 [Docket Entry Nos. 84 & 85] (requesting that this Court issue a "moratorium" on all demolitions within the Village because plaintiff believed that construction at a property on Burnett Street – a property that was not part of the instant litigation – was releasing asbestos). Plaintiff has additionally filed multiple documents indicating either an unwillingness or an inability to identify, understand, and follow the rules of this Court.  <u>See</u>, <u>e.g.</u> Correspondence of Evelyn Konrad, dated February 11, 2013 [Docket Entry No. 55] (indicating both that plaintiff had failed to identify or abide by this Court's "bundle rule" regarding the proper timing for filing of motions with the Court, and that plaintiff had incorrectly made her motion to amend her complaint pursuant to state, rather than federal, law); Correspondence of Evelyn Konrad, dated April 1, 2013 [Docket Entry No. 77] (indicating plaintiff's inability to understand the briefing

schedule set by the Court on the present motions, and also indicating further lack of understanding regarding the Court's "bundle rule"); Return of Documents form, dated May 20, 2013 [Docket Entry No. 89] (indicating that plaintiff had attempted to file a reply to Guerin's Answer to the Complaint, which is prohibited by the rules of this Court); Correspondence of Evelyn Konrad, dated June 26, 2013 (indicating that plaintiff was aware of, and had ignored, the Court's rule requiring that any request for additional pages on a motion be submitted no less than 48 hours in advance of the motion deadline when seeking additional pages for her response to the motions to dismiss, and also indicating that plaintiff sought special treatment from the Court based on personal circumstances, in spite of her status as a licensed attorney). Plaintiff has also materially misrepresented the content of the State Court's decision in one of the prior litigations in her pleadings before this Court,[16] and has, in an attempt to avoid the relevant statutes of limitations, submitted factual claims in her papers in opposition to the motions to dismiss that directly contradict the facts set forth in both the operative complaint and the proposed amended complaint[17].

Moreover, plaintiff's voluminous filings have grown so unmanageable that the Court was compelled to enter an Order prohibiting the submission of any further filings without leave

---

[16] Plaintiff alleged that Konrad, Index No. 07-26161, was dismissed because Attorney Robinson misrepresented to the State Court that the Village had never been served with the petition. However, the decision in that action plainly states that, while Robinson at one point made a motion to dismiss for lack of service, he withdrew that claim upon locating the petition, and the petition was ultimately dismissed because of plaintiff's failure to properly serve defendants Seroy and Crivello, not the Village. See § I(D), supra.

[17] In spite of the detailed description in the complaint of plaintiff's outspoken opposition to the 2005 Zoning Ordinance beginning prior to the Ordinance's passage, and the fact that plaintiff commenced State Court actions involving the Ordinance and its impact as early as 2007, plaintiff, in opposition to the motions to dismiss, attempts to claim that she was somehow unaware of the "illegality" of the 2005 Zoning Ordinance until some point in 2009, and is therefore entitled to equitable tolling. See § IV, supra.

pending the outcome of the motions to dismiss and amend.  See Order of the Undersigned, dated July 22, 2013 [Docket Entry No. 121] ("no party – plaintiff or defendant – shall make any further submissions without leave of the Court, pending the outcome of the pending motions").  Finally, plaintiff has filed accusations that pro se defendant William Brown's legal papers are being "ghostwritten" by defendant Elbert W. Robinson, Jr.  See Correspondence of Evelyn Konrad, dated June 26, 2013 [Docket Entry No. 96].  Plaintiff's only support for these allegations is her claim that she "recognize[s] his [Robinson's] style," and believes Brown's papers are similar. Id.  Making such a claim, absent a non-frivolous " basis in law and fact for doing so," is a clear violation of the relevant rules of attorney conduct.  See New York State Rules of Professional Conduct, Rule 3.1(a); see also Eastern District of New York Local Civil Rule 1.5(b)(5) (noting that attorneys admitted to practice in the Eastern District may be disciplined for failure to adhere to the New York State Rules of Professional Conduct in their conduct before this Court).

Based on plaintiff's conduct both in this case and in the prior State Court litigations, I find that plaintiff has engaged in a pattern of "vexatious litigation."  In re Martin-Trigona, 737 F.2d 1254, 1263 (2d Cir. 1984).  The "vexation, harassment, and needless expense" to the Village and the homeowners of the Rosko Place subdivision has persisted long enough.  In re Hartford Textile Corp., 681 F.2d 895, 897 (2d Cir. 1982).  It is my recommendation that plaintiff be warned that any further attempts to use her status as a licensed attorney to further harass the Village and her neighbors will "result in the issuance of an order barring the acceptance of any future complaints without [p]laintiff's first obtaining leave of the Court," Malley v. New York City Bd. of Educ., No. 94 Civ. 7186, 1995 U.S. Dist. LEXIS 10201, at *9 (S.D.N.Y. Jul. 24, 1995), and will also lead to sanctions pursuant to 28 U.S.C. § 1927.

CONCLUSION

For the reasons set forth above, I recommend that defendants' motions to dismiss the plaintiff's complaint be granted in their entirety; that plaintiff's motion to amend the complaint be denied; and that all pending motions for sanctions be denied in their entirety.  I further recommend, <u>sua sponte</u>, that plaintiff be warned against filing any future actions against the Village and/or homeowners within the Rosko Place subdivision in federal court, at the risk of being permanently enjoined from such filings, and of being sanctioned pursuant to 28 U.S.C. § 1927.


OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further appellate review.  <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 299-300 (2d Cir. 1992).


**SO ORDERED.**

Dated: Central Islip, New York
       July 31, 2013

                                         /s/ E. Thomas Boyle
                                         HON. E. THOMAS BOYLE
                                         United States Magistrate Judge

40